(965 P.2d 861)

No. 80,467

# In the Interest of D.R.R., Jr.

Opinion filed October 9, 1998.

*Mark Davis*, of Kansas City, for the appellant natural mother.

*Sheryl A. Bussell*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before LEWIS, P.J., PIERRON, J., and REBECCA L. PILSHAW, District Judge, assigned.

PIERRON, J. L.G. appeals the termination of her parental rights, challenging as a denial of due process the application of the statutory presumption of unfitness without a written pretrial order. She also contends that the trial court's findings of fact were not supported by substantial competent evidence. We affirm.

D.R.R., Jr., was born December 1, 1992. L.G. is the child's natural mother and D.R.R., Sr., is his natural father. Mother and son lived in a house rented by the natural father's brother, N.R., from about the time of D.R.R., Jr.'s birth. That house was home to approximately nine adults and their children. Father visited and spent alternate nights. In May 1993, parental rights of L.G. and D.R.R., Sr., were terminated as to two sons, in part because of conditions in the home. L.G. later gave birth to a daughter, L.R. N.R. was the child's natural father. L.G. "gave" the child to N.R. and his wife because a child of theirs had recently died. L.G.'s rights to that child (born December 1995) were terminated in the same proceeding as her rights to D.R.R., Jr. She does not appeal that termination.

On April 28, 1997, a social worker from the Wyandotte County Office of SRS went to the home in Kansas City, Kansas, to investigate an anonymous complaint of abuse of a child, L.O. The social worker was told that L.O. had been sent to California. A search warrant was executed the following day. Upon entering the residence, police found 5-year-old L.O. sitting on the floor in an upstairs hallway. The child was dirty, with bruises, burns, and scratches and swollen fingers. Her feet were so swollen that she could not stand. She was taken to the emergency room and admitted to the University of Kansas Medical Center because of the limited circulation in her feet.

Police found that eight other children, including D.R.R., Jr., lived in the home. One was in the hospital with pneumonia. Those found in the home appeared to be unattended. One small child was strapped in a car seat, and four small children were locked in an upstairs room. The home was full of debris and smelled of urine. Mattresses were dirty and without bedding. A pair of handcuffs was found in an upstairs bedroom. Approximately nine adults, all parents or other relatives to the various children, lived in the house or visited frequently. The trial court described the living situation as "kinship care gone berserk."

All of the children were seen by a pediatrician with the Child Development Unit and the University of Kansas Medical Center. The testimony regarding the physical abuse of L.O. was confirmed by medical testimony and photographs. The pediatrician noted cognitive and developmental delays, scars on L.O.'s scalp and extremities, and probable sexual abuse; the pediatrician concluded that L.O. had experienced global neglect and nonaccidental trauma.

When D.R.R., Jr., was taken from the home at the age of 4 years and 5 months, he was not toilet trained. His speech was limited and difficult to understand. He had difficulty feeding himself. He was, however, generally healthy, well nourished, and physically well developed. The parents were able to provide medical and vaccination records.

D.R.R., Jr., was adjudicated a child in need of care on June 19, 1997, and placed in SRS custody on June 20.

In August, L.G. pled guilty to endangering a child in violation of K.S.A. 21-3608 in connection with her failure to report the abuse of L.O. S.O., mother of L.O., admitted to police that she had handcuffed L.O. to the bed and stated that other adults in the household had done so as well. Others described in detail the abuse S.O. inflicted on L.O. They stated that L.O. slept handcuffed or tied to her mother's bed, that she was forced to stand in a corner for up to 8 hours at a time, and that S.O. kicked and beat L.O. and bent her fingers backward. L.O. was chained to the bed in such a way that she was forced to sleep on the floor. The explanation for tying L.O. to the bed was that she would take food in the night. One of the adults testified that S.O. had said of L.O., "I can't stand that little bitch, I wish she was dead," and that S.O. had stated that she wanted to get rid of all of her children.

At the pretrial conference on October 30, 1997, the trial court held that under K.S.A. 1997 Supp. 38-1585(a)(1), prior terminations of L.G.'s parental rights presumptively established her unfitness. The judge examined the findings of fact underlying the prior terminations. He found that a factor in each was L.G.'s lack of sufficient intelligence to grasp parenting skills. He found that the most recent termination had been factually very similar to the instant case. He also noted that L.G. had a "four year cycle" with three terminations fairly equally spaced over a 12- year period, so the passage of time would not be a factor indicating that L.G. should not be presumed to be unfit. He ruled that, because the underlying facts had probative value as evidence of L.G.'s current unfitness, the presumption was a K.S.A. 60-414(a) presumption and the burden of establishing fitness was on L.G.

L.G.'s rights to four other children have been terminated in the past. In August 1985, her rights as to one child were terminated because she lacked the intelligence to grasp parenting skills and showed no progress despite intensive services. In December 1988, her rights as to another child were terminated because L.G. was mentally deficient, another child had died, the child at issue had nearly died of dehydration from lack of feeding, and L.G. showed a lack of effort to comply with court orders. The death was an unexplained crib death. In May 1993, L.G.'s rights to two more

children were terminated because of her lack of parenting skills, the filthy conditions in the home, her failure to comply with court orders, and the fact that eight other people lived in the home.

D.R.R., Sr., had had his rights to four children terminated in the past. The terminations were in August 1985, December 1988, and May 1993. The May 1993 termination involved the two children he had with L.G. prior to D.R.R., Jr.

All of the adults faced criminal charges. Only those who had been sentenced at the time of the termination hearing testified. Both L.G. and D.R.R., Sr., testified.

At the termination trial in November, L.G. testified as the State's witness, and on her own behalf. Her testimony as a State's witness regarding her statements to police investigating abuse of L.O. consisted of five transcript pages of memory lapse. Her attorney asked on direct examination about her current residence. She stated that she and D.R.R., Sr., had rented a house and had worked to make it a fit place for them to live and raise a child, that she had cooperated with SRS and the court since D.R.R., Jr., was removed from the home, and that D.R.R., Jr., was different from her other children because she had had him for four years and loved him. There were no other witnesses on her behalf. The testimony of D.R.R., Jr.'s, foster mother is omitted from the record on appeal.

During the pretrial conference, the trial court exercised great care in orally explaining and applying the statutory presumption of unfitness in the manner prescribed by this court in *In re J.L.*, 20 Kan. App. 2d 665, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995). Appellant does not challenge the presumption, either as a question of law or as applied to the facts.

Rather, L.G. argues that she was denied due process in that the trial court did not prepare a written pretrial order as directed by Rule 140(e) (1997 Kan. Ct. R. Annot. 167). She reasons that without a written pretrial order she was unable to "make a trial record of rebuttal of presumptive unfitness" and thus is prevented from arguing on appeal that the presumption was rebutted. We disagree. L.G. had appointed counsel from May 7. The termination hearing date was set for November 3 and 4 at the disposition hearing held June 20. The State fully set forth the basis of its case in the motion

for termination filed October 22. The State pled a presumption of unfitness based on prior terminations of appellant's parental rights and the findings of fact contained in the journal entries of prior terminations. The pretrial conference was held October 30. L.G.'s counsel was present, the court's explanation was clear, complete and concise. L.G.'s counsel neither objected to the presumption nor asked questions. All evidence upon which the judge based his findings is documented and was available to appellant prior to and during trial. L.G. received notice of the court's intent to apply the presumption and an opportunity to be heard in rebuttal. Failure of the court to issue a written pretrial order did not cause a disadvantage to appellant.

In addition to the statutory presumption of unfitness, the trial court found that L.G. was unfit because (1) she is mentally deficient, (2) she has demonstrated a lack of effort to adjust her circumstances to meet the needs of her children, and (3) she cannot meet the physical, mental, and emotional needs of the children, now or in the future. Furthermore, the court considered that L.G. had pled guilty to endangering a child. The court stated: "In summary, [L.G.] continues to display the same lack of parenting skills, judgment and ability necessary to raise children."

"The standard of review in a case of this nature is whether there is substantial competent evidence in the record to support the trial court's decision that the parent was unfit and that the parental rights should be terminated. *In re S.M.Q.*, 247 Kan. 231, Syl. ¶ 1, 796 P.2d 543 (1990). 'An appellate court must not reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. It must review the evidence in the light most favorable to the party prevailing below.' 247 Kan. at 234." *In re N.D.G.*, 20 Kan. App. 2d 17, 20, 883 P.2d 89 (1994).

L.G. attempted to rebut the presumption of unfitness by establishing that she and D.R.R., Sr., had moved into a separate residence. The trial court did not consider that change sufficient to rebut the presumption of unfitness.

Further evidence of current unfitness included evidence that L.G. lied to police to cover up for S.O. during the investigation of the abuse of L.O. When asked about her statement that she had never seen S.O. abuse L.O., L.G. recalled making a statement but

admitted to no memory of anything she was asked or anything she said. The trial court could reasonably have inferred that the statement was not true and would conflict with the in-court testimony L.G. had just given that she had seen S.O. handcuffing L.O. almost every night and "always" hitting her with a board.

L.G. objects to the court's finding of mental deficiency without explicit evidence. The court observed her speech and conduct for 3 days. L.G. testified that she had remained in the home from which the children were removed, both in 1993 and 1997, because she had not been able to find another place to live. From such testimony, the court could reasonably conclude that L.G. was unable to solve problems and make good judgments.

L.G. also argues that the trial court's finding that she knew the home was an extremely poor environment for child rearing is unsupported by the record. While she did not literally say that she *knew* the environment was a poor one, she agreed that the statement was true, and she stated she had been trying to find another place to live. If she did not know previously, she should have known after this environment contributed to termination of her rights to two children in 1993.

Finally, L.G. argues that if D.R.R., Jr., is physically healthy, there is no evidence he is being harmed by living in the care of his natural parents. Neither K.S.A. 1997 Supp. 38-1583 nor the court looks to physical condition alone. Instead, the court must look to physical, emotional, and mental development, which the trial court properly did.

The trial court's decision was well supported and even compelled by the evidence presented.

Affirmed.