(233 P.3d 746)
Nos. 103,442
103,443
103,444

In The Interest Of: K.R., T.H., and E.R., Minor Children Under 18 Years of Age.

—

Opinion filed June 11, 2010.

*Grant C. Shellenberger* and *Peter J. Knowles,* legal intern, of Liberal, for appellant mother.

*Maria Kaminska,* assistant county attorney, for appellee.

Before RULON, C.J., MARQUARDT and GREENE, JJ.

GREENE, J.: The mother of three minor children appeals the district court's termination of her parental rights. She argues the court erred in its application of a presumption of unfitness under K.S.A. 2009 Supp. 38-2271(a)(5), and she challenges the sufficiency of the evidence to support the court's findings. We agree with her and reverse the judgment terminating her parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother's three children, ages 8, 13, and 16, were removed from her home in February 2008 based on truancy of the children and homelessness issues faced by mother. Until her parental rights were terminated by the district court in September 2009, mother had a mixed history of some compliance and some neglect of the conditions imposed for reintegration of her family. Compliance was undoubtedly affected by mother's diagnosed bipolar disorder. Among the conditions imposed on mother for reintegration of the children with mother were maintaining employment, maintaining stable housing, submitting to UA's, taking medications as prescribed, attending individual and family therapy sessions, and otherwise cooperating with community services' personnel assigned to her case.

Social worker and mother's case manager Jenny Sutton testified that "things were looking pretty good" for reintegration as of November or December 2008. Mother lost her job in December, however, and the situation began to erode. On one occasion on New Year's Eve, mother left the children with the 16-year-old son and other adults and "left the house"; it was disputed whether she went "to the bars" or elsewhere, and mother testified her absence was no more than 45 minutes. By spring 2009, the case manager came to believe that reintegration of the children was no longer viable. She cited noncompliance with the conditions of reintegration, stating that mother had "not made progress" and "it had been a year and the court was making a decision" about reintegration.

The final case management report filed by social worker Angela Hernandez indicated that as of July 2, 2009, mother was employed, had housing in Plains, had her back rent worked out, had no alleged drug use, had found free medications for a year and was taking

them as prescribed, but had not attended therapy sessions because no therapist had been assigned. When this social worker was asked if there were setbacks or other negatives beyond these positive aspects of mother's progress, she stated, "I'm unable to say that."

Leslie Bissell, the clinical director of Southwest Guidance Center and the primary therapist for mother, testified as follows:

"Q: . . . [H]ave we just given up on her completely and saying, she'll never be a good mom?

"A: I believe that [mother] has it within her to become a good parent. Is she able to do that at this moment in time, based upon when I saw her earlier in September [2009], I don't believe she's at that point now.

"Q: Okay. Do you think she could get there with your help?

"A: In time, yes.

"Q: Any idea how much time?

"A: If [mother] was to continue with therapy and she was compliant with all the recommendations, I would be a lot more comfortable with it in six months."

The relationship between mother and children does not appear to have deteriorated in any way. Sutton testified that the visitations "have gone well." The therapist testified that mother "wants to be with her children and she wants the best for her children," and on cross-examination, the therapist stated that mother would not intentionally cause physical harm or emotional abuse to the children.

In June 2009, the State filed a motion to terminate mother's parental rights. The district court conducted an evidentiary hearing in which the testimony referenced above was provided to the court. At the close of evidence, the guardian ad litem opposed the termination of mother's parental rights, stating in material part:

"Well, your honor, [as] the guardian ad litem, I'm supposed to look out for the children's legal rights and also make recommendations to the Court in the children's best interests. I've talked to the children today. I've been here at these proceedings and asked questions and listened to testimony. *And my recommendations are that the children be put back in the home immediately.* That SRS can continue supervision and even have custody, but make it a placement in the home. She has a home. It's not an ideal home, but I mean it is a home and that she and the children want to be able to enjoy together. She has an educational plan for the children that is eminently more workable than what we've got now. . . .

"She may not have the best type of job in the world, but she is making an effort and she still wants to better herself to get education. . . .

. . . .

*"But the main thing is, the children want to be with their mama. They miss her. They miss being with her and they want to get back with her."* (Emphasis added.)

The district court took the matter under advisement and later issued its journal entry concluding that mother's parental rights should be terminated. Among the findings of fact were these:

"The issue of terminating the natural mother's parental rights is a tough one. She has been attempting to comply with the Orders, but only in an on-again, off-again manner. There is no consistency on her part, whether she is taking her medication or not, whether she chooses to be employed or not. Right now she claims employment as a home caretaker for an individual in Plains, Kansas at the low-income housing apartments she lives at. During the pendency of this action, there have been no severe drug or alcohol issues. Her U.A.s for drugs have been negative, but the evidence reflects she is still consuming alcohol even when the children are with her.

. . . .

". . . [T]he Court makes the specific finding she is unfit to be a parent and not able to care for the ongoing physical, mental, and emotional needs of the child as follows:

"a. Reasonable efforts by SRS and SFA have been expended for the benefit of the natural mother and her minor children and notwithstanding those offers and plans, the opportunity to rehabilitate the natural mother has failed;

"b. There has been a lack of effort, and in some ways no effort, by the natural mother to adjust her parental circumstances, conduct, and conditions to meet the day-to-day needs of her minor children;

"c. The natural mother, given the fact the minor children have been living out of her home for more than one year, has failed to carry out a reasonable plan approved by the Court directed towards reintegration of the children into her home and the opportunity to do so is not foreseeable.

"d. The presumption under K.S.A. 2009 Supp. 38-2271(a)(5) applies and the mother has failed to rebut the presumption."

Mother timely appeals.

## STANDARDS OF REVIEW

Before parental rights will be terminated, the State must provide clear and convincing evidence that a parent is unfit because of conduct or condition rendering the parent unable to care properly for a child and that the conduct or condition is unlikely to change in the foreseeable future. K.S.A. 2009 Supp. 38-2269(a). The court must also consider whether termination of parental rights is in the

best interests of the child. K.S.A. 2009 Supp. 38-2269(g)(1). Clear and convincing evidence is "an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt." *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008).

Our standard of review of an order terminating parental rights is to determine whether, after review of all the evidence, viewed in the light most favorable to the State, the court is convinced that a rational factfinder could have found the determination to be highly probable. See *In re B.D.-Y.*, 286 Kan. 686, Syl. ¶ 4; *In re Adoption of Baby Boy M.*, 40 Kan. App. 2d 551, 559, 193 P.3d 520 (2008).

When an appeal frames an issue of construction and application of a statute, we have unlimited review. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009).

## DID THE DISTRICT COURT ERR IN ITS APPLICATION OF THE PRESUMPTION OF UNFITNESS UNDER K.S.A. 2009 SUPP. 38-2271(a)(5)?

Among her arguments on appeal, mother contends that the district court erred in its application of the presumption of unfitness under K.S.A. 2009 Supp. 38-2271(a)(5). She argues (1) that the State failed to plead or suggest that the presumption would apply, with resulting due process implications; (2) that the court's failure to consider K.S.A. 60-414 in applying the presumption was reversible error, citing *In re J.S.*, 42 Kan. App. 2d 113, 119, 208 P.3d 802, *rev. denied* 289 Kan. 1278 (2009); and (3) that there was insufficient evidence to support the application of the presumption. We agree with mother on all three counts, but we reverse due to the insufficiency of evidence to support the district court's judgment.

K.S.A. 2009 Supp. 38-2271 sets forth a number of presumptions of unfitness, including:

"(a) It is presumed in the manner provided in K.S.A. 60-414, and amendments thereto, that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that:

. . . .

"(5) the child has been in an out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home."

"(b) The burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence. In the absence of proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the court shall terminate parental rights in [termination] proceedings pursuant to K.S.A. 2009 Supp. 38-2266 et seq."

## Due Process Violation?

Mother contends she had no notice that the State would argue to apply the presumption, had no opportunity to address and rebut its application, and was prejudiced by its application to terminate her parental rights. She contends the first and only mention of the presumption was in the State's response to mother's motion for directed verdict and that the lack of evidence to support the presumption created no reason for her rebuttal of same. Moreover, she contends the first mention of the presumption by the court was in its journal entry following trial. The State does not dispute these facts but argues that no notice was required, an opportunity to rebut was present after the directed verdict motion, and independent grounds support the termination in any event.

We are unable to discern from the record the precise facts surrounding the assertion of the presumption, but this much is clear: (1) None of the State's pleadings present in the record on appeal reflect an assertion that the presumption should apply; (2) the State has not disputed on appeal mother's account of the lack of notice that the presumption would be applied; (3) although it appears a final pretrial conference was conducted, no final pretrial order was filed, in contravention of Supreme Court Rule 140(e) (2009 Kan. Ct. R. Annot. 223); (4) the State waived its opening statement, so there was no indication that the presumption would be asserted at the hearing; (5) the only mention of the presumption in the transcript of hearing is a statement by the State in response to a motion for directed verdict that "in this case, we believe that K.S.A. 38-2271 applies"; (6) no suggestion of the applicability of the presumption was mentioned by either party in closing arguments; (7)

in closing argument, mother's counsel acknowledged the magistrate previously found that reintegration was not viable because the children were 1 year into out-of-home placement; and (8) the first mention of the presumption by the court was in the journal entry of judgment, where it appears to be the exclusive basis for termination of mother's parental rights.

We are troubled by the application of a presumption of unfitness against mother in the court's journal entry where there has been no more than a brief hint of its applicability in an oral response of the State to a motion for directed verdict. It is beyond question that the presumptions set forth in K.S.A. 2009 Supp. 38-2271 must be applied in a manner that comports with procedural due process. See, *e.g.*, *In re J.L.*, 20 Kan. App. 2d 665, 668-82, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995) (K.S.A. 1994 Supp. 38-1585 presumption was unconstitutional as applied).

This is not the first time we have addressed the need for pretrial notice of the assertion of a statutory presumption in a termination of parental rights proceeding. In *In re D.R.R.*, 25 Kan. App. 2d 561, 965 P.2d 861 (1998), a panel of our court considered whether the lack of a final pretrial order noting the assertion of such a presumption was reversible error. The panel decided that it was not, but its reasoning was based on the fact that, despite the lack of a pretrial order, the district court "exercised great care in orally explaining and applying the statutory presumption of unfitness in the manner prescribed by this court in *In re J.L.*, 20 Kan. App. 2d 665, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995)." 25 Kan. App. 2d at 564. In this case, we cannot ascertain whether such care was taken in any pretrial conference to make mother aware that the State would assert the presumption against her because the pretrial conference questionnaires and transcript have not been made part of the record on appeal and no pretrial conference order was filed by the court.

In any event, we are unable to reverse on this issue because we are not convinced that mother was truly surprised by the assertion of the presumption. First, it appears that the magistrate's prior decision on reintegration was based on the fact that out-of-home placement had extended beyond 1 year, thus providing some in-

dication to mother or her counsel that the presumption would again be asserted in the termination hearing. Second, although counsel suggests that there was no pretrial reference to the presumption, the pretrial questionnaires have not been made part of the record, and we are unable to confirm whether there was any contention or issue stated as to the assertion of the presumption. Third, when the presumption was referenced by the State in response to the motion for directed verdict, mother's counsel failed to object, indicate surprise, or seek a continuance to prepare testimony in rebuttal of the presumption. Finally, the admission at the beginning of counsel's closing argument indicates to this court that counsel was well aware of the problem presented by the presumption, but he took no direct action to rebut the presumption or to preserve mother's due process argument at that time. Under these circumstances, we must reject mother's due process argument on appeal. See *Kelly v. VinZant*, 287 Kan. 509, 526, 197 P.3d 803 (2008) (appellant has burden to designate a record sufficient to establish the claim of error); *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007) (issues not raised before trial court cannot be raised on appeal).

Nevertheless, we emphasize that in proceedings of this nature, it is critical that the parent against whom a statutory presumption will be asserted have adequate notice of the assertion so that rebuttal evidence can be presented to the court. The better practice is for the court to conduct a pretrial conference and file a final pretrial order that clearly and unequivocally provides notice that a statutory presumption will be asserted against the parent.

### Absence of K.S.A. 60-414(a) or (b) Determination

As argued by mother here, failure to consider K.S.A. 60-414 prior to applying a presumption of unfitness is a constitutional violation. *In re J.S.*, 42 Kan. App. 2d at 119. Prior to application of such a presumption, the trial court must first determine whether subsection (a) or (b) of K.S.A. 60-414 is applicable. If it is determined that subsection (b) applies, *any evidence* which would support a finding of fitness, including the uncorroborated testimony

of a parent, will result in the disappearance of the presumption of unfitness, and the burden of proving unfitness would once again be upon the State. *In re J.L.*, 20 Kan. App. 2d at 681.

K.S.A. 60-414(a) and (b) provide:

"**Effect of presumptions**. Subject to K.S.A. 60-416, and except for presumptions which are conclusive or irrefutable under the rules of law from which they arise, (a) if the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact, the presumption continues to exist and the burden of establishing the nonexistence of the presumed fact is upon the party against who the presumption operates; (b) if the facts from which the presumption arises have no probative value as evidence of the presumed fact, the presumption does not exist when evidence is introduced which would support a finding of the nonexistence of the presumed fact, and the fact which would otherwise be presumed shall be determined from the evidence exactly as if no presumption was or had ever been involved."

Reversal on this basis is not required where the parent fails to raise the issue before the district court. For the same reasons that we are unable to reverse based upon mother's due process argument, we are unable to reverse based on the failure of the district court to make the 60-414(a) or (b) determination. Consistent with authority from other panels of our court, however, we stress that the failure to make the determination is error, and the only reason that it is not reversible in this case is the failure of mother to raise the issue in district court. See *In re J.S.*, 42 Kan. App. 2d at 119.

We note that had the statutory determination been made here, the proper subsection was K.S.A. 60-414(b) because the facts from which the K.S.A. 2009 Supp. 38-2271(a)(5) presumption arose had little if any probative value as evidence of the presumed fact. The testimony reflects that the out-of-home placement in excess of 1 year was not due to indifference of mother but rather to a joint decision of the mother and therapist that more time was needed for reintegration. Where such mitigating circumstances are shown, the determination of the proper K.S.A. 60-414 subsection is critical; notice to mother may have provoked this critical rebuttal, and application of subsection (b) may have resulted in the complete dissipation of the presumption.

## WAS THE JUDGMENT OF TERMINATION SUPPORTED BY SUFFICIENT EVIDENCE?

The State argues that even if the presumption of unfitness under K.S.A. 2009 Supp. 38-2271 cannot be asserted and the K.S.A. 60-414(a) or (b) determination was not made, "there was ample evidence to support a finding of unfitness based on the statutory factors listed in K.S.A. 2009 Supp. 38-2269." In contrast, mother contends that the evidence was insufficient to support the judgment under either K.S.A. 2009 Supp. 38-2269 or K.S.A. 2009 Supp. 38-2271. We agree with mother.

At the outset, we note that the district court apparently relied exclusively on the presumption under K.S.A. 2009 Supp. 38-2271(a)(5). The journal entry contains no explicit finding that mother's unfitness is unlikely to change in the foreseeable future; in fact, the only mention of any such unlikelihood is the finding in connection with 38-2271 stating that mother failed to carry out a reasonable plan towards reintegration "and the opportunity to do so is not foreseeable." We are uncertain whether this finding can or should be interpreted to mean that mother's unfitness was unlikely to change. It would appear that the finding is directed toward the *opportunity* to reintegrate the family: Does it mean she will have no opportunity because the presumption applies, thus terminating any such opportunity; does it mean that she will have no opportunity because the relevant agencies and social workers have given up on her; or does it mean that she will have no opportunity because of some obstacle unrelated to her purported unfitness? Obviously, the choice of words here was unfortunate, and we must conclude the finding is inadequate for both K.S.A. 2009 Supp. 38-2269(a) and K.S.A. 2009 Supp. 38-2271(b).

We have consistently held the better practice dictates that the district court expressly reflect in its journal entry of judgment that all statutory findings were made and that the proper standard of proof was employed in making these findings. See *In re B.E.Y.*, 40 Kan. App. 2d 842, 844, 196 P.3d 439 (2008); *In re M.B.*, No. 103,054, unpublished opinion filed March 5, 2010.

*Clear and Convincing Evidence that Condition or Conduct of Unfitness Unlikely to Change in Foreseeable Future?*

Absent from the State's brief is any review of record evidence supporting the crucial element that mother's unfitness "is unlikely to change in the foreseeable future" under K.S.A. 2009 Supp. 38-2269(a). Scouring the transcript of the hearing, we find limited testimony on this issue. First, social worker Hernandez testified that she was unable to say there were setbacks or "anything different than all of these positives" as of the filing of the State's motion to terminate. Second, social worker and case manager Sutton testified that in the spring of 2009 she was of the belief that "reintegration was no longer viable," but she was not asked whether she continued to have this belief at the time of the termination hearing in late September. Mother's therapist testified—as quoted above—that mother "has it in her to become a good parent" and that she could "get there" in 6 months. Mother's testimony indicates that as of the termination hearing, there had been substantial progress toward all conditions of reintegration.

"Q. . . . Has your life-style changed?
"A. Yes.
"Q. The latest report from SRS says that you have not attended family therapy due to Southwest Guidance Center not assigning a therapist?
"A. Yes.
"Q. Had you, at any time, refused to go to family therapy?
"A. No.
"Q. So it was your understanding that you were just waiting on someone to get you lined up?
"A. Yes.
"Q. As of July of '09, it says you were taking your medication. Are you still taking your medication?
"A. Yes.
"Q. It says that you're employed with Sheldon Farms, and that was just harvest work?
"A. Yes.
"Q. And you're now employed by someone else?
"A. Yes. That could still become an option, because corn harvest just started also.
"Q. It says you're maintaining housing in Plains, which we talked about, for more than a year. I'm reading this progress report and it says you've either met or are

meeting each of the goals in your original case plan. Has anyone told you what else you're supposed to be doing?

"A. No, just about finding employment, is all that I've heard for quite awhile now.

"Q. Okay."

Finally, we note that there was no professional testimony that mother's condition of unfitness was unlikely to change in the foreseeable future. Based upon all this evidence, viewed in the light most favorable to the State, we are simply not convinced that it was highly probable based on clear and convincing evidence that mother's condition or conduct of unfitness was unlikely to change in the foreseeable future.

*Adequate Consideration and Findings as to the Best Interests of Children*

Even if we were to accept the district court's findings as to mother's unfitness, however, the court abused its discretion when it failed to consider whether the termination was in the best interests of the children under K.S.A. 2009 Supp. 38-2269(g)(1), and this omission alone is sufficient to reverse the judgment of termination. See *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009); *In re J.I.C.-L.*, No. 103,247, unpublished Court of Appeals opinion filed April 2, 2010, slip op. at 4. When the court applies one of the presumptions under K.S.A. 2009 Supp. 38-2271, this alone does not warrant termination. The statute is clear that when a presumption is asserted and the parent does not adequately rebut the presumption, "the court shall terminate parental rights in proceedings pursuant to K.S.A. 2009 Supp. 38-2266 *et seq.*, and amendments thereto." In proceedings pursuant to K.S.A. 2009 Supp. 38-2266 *et seq.*, the factors to be considered are set forth in K.S.A. 2009 Supp. 38-2269, and subsection (g)(1) provides:

"If the court makes a finding of unfitness, the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child. In making this determination, the court shall give primary consideration to the physical, mental and emotional health of the child. If the physical, mental or emotional needs of the child would best be served by termination of parental rights, the court shall so order."

It would appear from the journal entry that the district court was aware of the need to consider the best interests of the children,

but its findings are short of the statutory requirement. The court held in this regard:

"22. The Court is faced with the daunting task of what is in the best interest of the children, the needs for permanency in their lives, the need to know where they are at, what is going to happen, and what to expect.

"23. The mother testified about having plans to do several things but her past actions reflect an inability to carry through with her day-to-day obligations for the benefit and best interests of [the children]."

These findings fall short of the statutory requirement, which dictates that the court consider "whether termination of parental rights as requested in the petition or motion is in the best interests of the child[ren]." K.S.A. 2009 Supp. 38-2269(g)(1). We understand the district court to find that mother was unable to carry through with some of her obligations for the best interests of the children, but the task before the district court was to determine *whether termination of parental rights* was in the best interests of the children. In other words, many parents may be unable to carry through with obligations that are in the best interests of their children, but this does not mean that termination of their parental rights would be in the best interests of their children.

The statutory requirement directs the court to give primary consideration to the physical, mental, and emotional health of the children. In so doing, the court must weigh the benefits of permanency for the children without the presence of their parent against the continued presence of the parent and the attendant issues created for the children's lives. In making such a determination, we believe the court must consider the nature and strength of the relationships between children and parent and the trauma that may be caused to the children by termination, weighing these considerations against a further delay in permanency for the children. This is of particular concern here, given the clear position of the guardian ad litem, who vigorously advocated against termination and for immediate reintegration. On this basis alone, a reversal of the district court's judgment of termination is required.

We recognize that mother may not be the best model of motherhood, but this case is devoid of many factors present in other cases of this nature. There are no allegations of abuse, no allega-

tions of addiction, no allegation of filthy living conditions, no allegations of a dangerous relationship with a boyfriend, and no allegations of lack of interest in the children. Instead, mother's apparent relationship with the children led to a strong plea from the guardian ad litem to reunite the family. Although children are entitled to permanency in child time, see *In re D.T.*, 30 Kan. App. 2d 1172, 1175, 56 P.3d 840 (2002) , there is no fixed deadline of 1 year for reintegration, as suggested by some of the witnesses here. The totality of these circumstances convinces us that the best interests of these children—"who want to be with mama"—were not served by a termination of mother's parental rights.

## SUMMARY AND CONCLUSION

In summary, these proceedings were flawed by the assertion of a statutory presumption without little if any notice to mother, by the failure of the court to make a K.S.A. 60-414(a) or (b) determination before applying a K.S.A. 2009 Supp. 38-2271 presumption, and by the failure of the district court to consider the best interests of the children under K.S.A. 2009 Supp. 38-2269(g)(1). Additionally, the State failed to establish by clear and convincing evidence that any unfitness of mother was unlikely to change in the foreseeable future as required by both K.S.A. 2009 Supp. 38-2269(a) and K.S.A. 2009 Supp. 38-2271(b). Based upon the insufficiency of the evidence, we reverse the judgment of termination of mother's parental rights.

We do not remand for further proceedings on the State's motion to terminate parental rights, but we are cognizant of the ongoing duties of the appropriate agencies and the district court to continue their respective authority and jurisdiction to monitor mother's progress and the children's placement. Obviously, the net result of our opinion is that mother may get the 6 months suggested by her therapist to show that she is capable of fully addressing the conditions for reintegration and achieving the goal of family reintegration. Needless to say, this will probably be her final chance. If she cannot achieve the progress necessary, perhaps the parties should explore permanent guardianship.

Reversed.