NOT DESIGNATED FOR PUBLICATION

Nos. 114,930
114,932

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of B.A.O. Year of Birth 2006 a Female,
and B.A.O. Year of Birth 2004 a Female.

MEMORANDUM OPINION

Appeal from Harvey District Court; JOE DICKINSON, judge. Opinion filed September 2, 2016.
Affirmed.

*David J. Stucky*, of Adrian & Pankratz, P.A., of Newton, for appellant natural mother.

*Gregory C. Nye*, of Nye & Nye, of Newton, for appellant natural father.

*Kaitlin M. Dixon*, assistant county attorney, for appellee.

Before GARDNER, P.J., BUSER and STANDRIDGE, JJ.

*Per Curiam*:  These cases, consolidated on appeal, ask whether the district court properly terminated Mother's and Father's parental rights. Finding clear and convincing evidence in support of the district court's determinations, we affirm.

I.      *Factual and Procedural Background*

In April 2014, the Kansas Department for Children and Families (DCF) filed a child in need of care (CINC) petition on behalf of the parents' two daughters, born in 2004 and in 2006. Father was incarcerated at the time. Both parents stipulated that the

1

girls were children in need of care, and St. Francis Community Services (SFCS) began working with them in developing a case plan to reintegrate the children with the parents.

Approximately 18 months after the children entered care, the State filed a motion to terminate parental rights, supported by a document listing dates and facts called, Points of Severance. At the termination hearing, in November 2015, Mother appeared in person and Father appeared by telephone. Each parent had counsel. Mother and Father agreed to the State's proffer of the petition and the Points of Severance as its sole evidence. After testimony from each of the parents, the district court found clear and convincing evidence that each parent was unfit and that it was in the best interests of the children to terminate the parental rights. Both parents timely appealed, and we consolidated the cases on appeal.

II.    *The Governing Law*

Because a parent has a fundamental liberty interest in the relationship with his or her child, the allegations of conduct that form the basis for termination must be proved by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769-70, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). To terminate parental rights, a district court must find by clear and convincing evidence (1) that a parent is unfit by reason of conduct or condition which renders the parent unable to properly care for his or her child, (2) that the conduct or condition is unlikely to change in the foreseeable future, and (3) that termination of parental rights is in the child's best interests. K.S.A. 2015 Supp. 38-2269(a), (g)(1). The statute sets out a nonexclusive list of factors a district court must consider when determining whether a parent is unfit. If supported by clear and convincing evidence, a single statutory basis for unfitness can support terminating a parent's rights, though courts should consider all applicable bases. K.S.A. 2015 Supp. 38-2269(f); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). The State bears the burden of proof in this matter.

2

We review a district court's decision to terminate a parent's rights by applying a clear and convincing evidence standard, asking whether a rational factfinder could have found it highly probable that the parent's rights should be terminated. *In re B.D.-Y.*, 286 Kan. at 698. We review the evidence in the light most favorable to the State, but we cannot reweigh the evidence, judge the credibility of witnesses, or redetermine factual questions. 286 Kan. at 705.

III.     *The Mother's Unfitness*

We first review the evidence relating to the Mother's fitness to parent. The district court's primary reasons for terminating the mother's parental rights were her serious mental illness, her lack of stable housing, and her failure to make timely, adequate progress on her case plan tasks.

A. *Mental Health*

K.S.A. 2015 Supp. 38-2269(b)(1) provides that unfitness may be found where clear and convincing evidence shows "[e]motional illness, mental illness, mental deficiency or physical deficiency of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental, and emotional needs of the child." In its finding of unfitness, the district court cited the mother's "serious mental health concerns [including] suicidal ideations" and her "problems in getting the initial mental health work done, so really pretty simple things to accomplish that have seemed to drag on and drag on before these things were attended to."

Mother did not testify regarding mental illness but argues that she completed some of the mental health-related tasks from the case plan:  she received a mental health recommendation, obtained medication, and received counseling, although she admits she missed some appointments. We examine the details below.

3

The case plan required Mother to complete a mental health assessment, follow all recommendations, and sign a release allowing SFCS to obtain documentation of results and compliance. Mother reported having completed an assessment in May 2014, shortly after the CINC hearing, but the State was not able to verify this because Mother did not sign a release. The first assessment the State was able to verify was conducted 7 months later, in January 2015, after Mother went to an emergency room with suicidal ideations. Mother was diagnosed with Bipolar Disorder II; Post Traumatic Stress Disorder (PTSD); Stimulant Use Disorder, amphetamine-type substance, severe, in early remission; Alcohol Use Disorder, severe, in sustained remission; and Cannabis Use Disorder, moderate, in sustained remission.

In February 2015, Mother reported that she had "a mental breakdown" at work. Prairie View Mental Health Center called SFCS and recommended inpatient treatment for Mother because she had "deep depression [and] was speaking of auditory hallucinations." In March 2015, Mother returned to Prairie View for crisis intervention, reporting suicidal ideations and not feeling safe. She also reported that she had experienced suicidal ideation on a daily basis for years. Six days later, Mother returned to Prairie View for crisis intervention, again reporting suicidal ideations and not feeling safe.

In April 2015, Mother completed a second mental health evaluation and was diagnosed with Major Depressive Disorder, recurrent; PTSD; and Borderline Personality Disorder. Both mental health evaluations recommended weekly individual therapy, medication evaluation, and chemical dependency evaluation. Mother attended only two of the seven scheduled individual therapy sessions between April 2015 and July 2015.

The case plan required Mother to attend medication management appointments and sign a release to allow SFCS to obtain documentation. Although Mother made some

4

efforts toward this goal, the first effort reported was not until 7 months after the initial CINC hearing. At that time, November 2014, Mother was not taking her medications.

No consistency or continuity in treatment was shown. Mother reported going to five different providers between November 2014 and May 2015. In at least two instances, the providers reported that she did not attend scheduled sessions. SFCS provided transportation for an appointment at Prairie View in March 2015, following her mental breakdown at work and her reports of hallucinations the month before. Although she sought crisis intervention twice in March, she did not attend a medication management appointment in April. In May, she reported that she sought medication management services from the county health department and got a prescription for Prozac, but she did not provide verification to SFCS. Over the course of this case, she did not stay on medication consistently. The evidence shows that her belated and inconsistent efforts to medicate or manage her illness were not effective.

We find clear and convincing evidence to support the district court's conclusion that Mother's mental illness was of such a duration and nature that she would be unable to care for the ongoing physical, mental, and emotional needs of the children and that Mother was therefore unfit pursuant to K.S.A. 2015 Supp. 38-2269(b)(1) and also under (b)(8) for lack of effort to change her condition.

### B. *Failure to Carry Out the Tasks of a Reasonable Reintegration Plan*

The permanency plan written in May 2014 set out tasks for the parents that would help them provide a safe, stable environment to meet their children's basic needs. The initial target date for completion was November 2014. The record shows that Mother did meet several tasks by the time of the November 2015 termination hearing: she had negative results on each mouth swab drug test, she completed a parenting class, and she signed a release for court officers to exchange information with SFCS about her

5

supervision and new charges against her. Mother testified that she once walked from El Dorado to Newton to attend a court hearing in this case. Despite that commendable effort, Mother did not show a similar level of commitment on other important tasks in her case plan.

1. *Failure to Maintain a Clean and Safe Residence*

Mother's case plan required her to maintain a clean and safe residence with utilities running, appropriate food, and vermin and insect free without threat of eviction for 6 months. Mother lived at four or more addresses between July 2014 and June 2015 and had two periods of homelessness. In September 2014, Mother reported she was homeless but was trying to rent an apartment. In November 2014, SFCS found her residence clean and appropriate; however, she was evicted in March 2015 and was taken to a homeless shelter.

A month later, Mother reported she was living with a friend. The following month, Mother reported she was living in a different apartment. The next month, she reported she was living in her own residence and renting month to month but did not provide to SFCS rent receipts or proof of whether anyone else lived in the residence. Then in November 2015 at the termination hearing, she testified that she had moved just the week before to a two-bedroom house. She testified that SFCS had not had the opportunity to do a walk-through but that the house was clean and appropriate.

The district court found that the evidence showed "mom's kind of transient nature, including a homeless shelter in January 2015." Mother moved from town to town and lived with friends, reported a different address at every review hearing, and moved again 1 week before the termination hearing. We find clear and convincing evidence supporting the district court's finding that Mother was unable to maintain stable housing for herself.

6

## 2. *Domestic Violence Classes*

Mother completed the orientation session of the domestic violence classes, reported that she completed other classes, and testified that she believed she had met the requirements of this task. The State disagreed.

The Points of Severance reflects that Mother had failed to complete a domestic violence course and that SFCS believed Mother needed more domestic violence support "due to her poor choices in relationships." SFCS reported that it was aware of domestic violence between Mother and Father; and the foster mother reported the girls had told her they had seen their parents fighting and hitting each other and the police coming to arrest dad because "mom lies." Mother and Father were not together, however, at the time of the termination hearing.

But SFCS had also reported violence between Mother and the boyfriend she lived with during part of 2014 and 2015. The State's report to the court characterized the boyfriend as "a known sex offender." Mother reported to SFCS that she had to move to another town so the boyfriend would not follow her, and SFCS recommended that she seek an order of protection if she felt unsafe. These facts show that, despite SFCS efforts to help her change her circumstances, Mother continued to choose partners who were unsafe for her and for her children.

## 3. *Other Case Plan Tasks*

Mother testified that she thought she had done what she was originally asked to do in the case plan. Further, she argues that she had made significant strides despite her limited resources and any shortcomings in completing her case plan were not due to neglect, but instead to financial difficulties.

The evidence presented to the district court shows that Mother did not follow a cleaning chart for herself, make a chore chart for her daughters, attend a budgeting class, sign releases for her mental health evaluation records, or provide pay stubs from employment. She argues that these were minor requirements and that the district court "should have factored in the likelihood of Mother completing all allegedly outstanding case plan tasks given a little more time and money." However, most or all of those tasks could have been completed without cost and with little effort. The district court noted that Mother had 18 months to accomplish her tasks and "a lot of these things would have been simple to accomplish" within that time. The district court stated that Mother's efforts were "too little, too late." Mother's failure to accomplish simple tasks supports the district court's finding that she did not make enough effort to complete the plan or to adjust her conditions to meet the needs of her children.

Viewing the evidence in the light most favorable to the State, we find clear and convincing evidence of Mother's unfitness under K.S.A. 2015 Supp. 38-2269(c)(3). This, in combination with the fact that the children had been in out-of-home placement for nearly 18 months at the time of the hearing, provides grounds for termination under factor (b)(9) as well.

## C. *K.S.A. 2015 Supp. 38-2271(a)(1) Presumption of Unfitness*

Mother argues that it was improper for the State to allege a statutory presumption of unfitness in its Points of Severance based on her relinquishment of rights for her two older children. But the district court did not rely on that presumption, instead reaching its decision by applying the statutory factors to the facts of the case and then finding that the State met its burden to produce clear and convincing evidence of the mother's unfitness. Accordingly, we find no error in this regard.

8

D. *Likelihood of Change in the Foreseeable Future*


We also agree that Mother's inability to care for her children is unlikely to change in the foreseeable future. K.S.A. 2015 Supp. 38-2269(a). "Foreseeable" is examined from the perspective of a child, not of an adult. *In re M.H.*, 50 Kan. App. 2d at 1170. As the district court found, "[H]istory is a pretty good indicator of the future." See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982) (finding a court may predict a parent's future unfitness based on his or her past history). Mother was not able to "turn things around" in the 18 months between the filing of the petition and the termination hearing, and no unique circumstances during that time period precluded her from doing so.


E. *The Best Interests of the Children*


The district court must also consider whether the children's physical, mental, or emotional health would best be served by the termination of parental rights. K.S.A. 2015 Supp. 38-2269(g)(1). We review that decision only for an abuse of discretion. A district court abuses its discretion only when it bases its decision on an error of fact or law or when its decision is so unreasonable that no one would agree with it. *In re M.H.*, 50 Kan. App. 2d at 1175. We consider, in addition to the relationship between parent and child, any detriment to the physical, mental, or emotional health of a child if parental rights are not terminated, as well as the benefits of permanency. See K.S.A. 2015 Supp. 38-2269(g)(1); *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010).


The district court found that Mother was trying to keep things together for herself "but still is not in a position where she's able to care for her kids." The district court stated, "[T]he biggest concern is that in terms of these kids' young lives, the time is passing by . . . [and] I'm not confident at all that it would ever get to the point where Mother and Father would be in good enough shape to get the kids back in their care." We find no abuse of discretion in the district court's finding that termination would provide

9

permanency and serve the best interests of the children. Thus, we affirm the district court's termination of Mother's parental rights.

IV.    *The Father's Unfitness*

A. *Failure to Provide Stable Housing*

The district court was primarily concerned that Father had not secured his own housing during the year after he was released from prison.

After Father was released from prison, he failed to give SFCS an address where he was staying in Emporia and stated he was going to move to Wichita with his girlfriend. In May 2015, 6 months after Father was released from prison, Father reported to SFCS that he had no residence and sometimes stayed with one of his sisters. At the termination hearing 6 months later, Father still had made no progress toward a stable home for his children and was living with his sister.

Father said this was "to make sure I don't drown . . . myself trying to live on my own. Once I get my fines and everything paid off, I can move out of this place and go somewhere else if I have to, but right now I don't want to jeopardize myself on probation." But Father was aware that his case plan required him to "maintain a clean and safe residence with utilities running, appropriate food, vermin and insect free, without threat of eviction for six months."

Father's commitment to completing his probation is laudable. At the time of the termination hearing, he reportedly had full-time employment; however, Father's failure in the 12 months after he was released from prison to obtain his own housing and provide a clean, safe and stable residence for his children as required by the case plan supports the district court's finding that Father failed to put forth the effort that was required to change

10

existing conditions to meet the needs of his daughters. See K.S.A. 2015 Supp. 38-2269(a), (b)(8).

## B. *Failure to Perform Reasonable Tasks on Case Plan*

The district court also found that Father did not put forth "enough effort to actually accomplish what needed to be accomplished" on his case plan. See K.S.A. 2015 Supp. 38-2269(a), (b)(8), (b)(9), (c)(3). Our review of Father's progress on his case plan tasks supports that conclusion, although Father did make some effort and accomplished some of the assigned tasks, as the district court acknowledged.

### 1. *Domestic Violence and Mental Health*

The case plan required Father to attend domestic violence and mental health evaluations and follow the recommendations for counseling or treatment. Father attended only half of his mental health counseling sessions and just over one-third of his domestic violence classes. Father explained that he sometimes missed the counseling sessions because he overslept.

Father argues that being imprisoned and impoverished were his main difficulties in meeting his case plan tasks. But Father was released in November 2014, 1 year before the hearing, and delayed 6 months in beginning the domestic violence assessment. That assessment caused the social worker to recommend a 27-week domestic violence class. The Points of Severance refers to the social worker's reported concern with Father's "value and respect of partners, degradation, intimidation and threats, and physical abuse of partners" and concludes "[Father] is a high risk reoffender."

Father started the domestic violence classes 2 or 3 months after his assessment and thus, had completed only 10 weeks of the 27-week program. When asked why he had

11

waited so long to get started on some of the case plan tasks, Father initially responded he had "no clue" but then stated he could not previously afford the costs of $150 for the evaluation, $35 for the orientation, $25 for a book, and $35 for all the classes after that.

These costs should not have been a significant obstacle given that Father reported full-time employment and few expenses. Nor should these costs have prevented him from beginning other case plan tasks that required no expense, as noted below.

2.  *Other Tasks from the Case Plan*

Father did complete several tasks:  he had negative results on each mouth swab drug test; he completed a 1-day parenting class; he signed a release for his probation officers to exchange information with SFCS; and he maintained contact with SFCS. However, Father did not complete some of the simplest tasks in his case plan:  he did not take a budgeting class; he did not complete a cleaning chart for himself or a chore chart for the children; and he did not provide documentation of employment to SFCS. Father testified that he was working full time at QSI and had provided documentation to SFCS in July or August 2015 but acknowledged that he had not provided more recent pay stubs, explaining that he would have had to access them through a computer at the library.

Viewing the record in the light most favorable to the State, we agree that Father's efforts were insufficient. The case plan progress reports, including progress on the task of maintaining an independent residence, show clear and convincing evidence for the district court to find Father unfit under K.S.A. 2015 Supp. 38-2269(c)(3) (failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home).

That finding also provides another basis for a finding of unfitness, factor (b)(9). It states that when a factor from subsection (c) applies, the court is to consider whether the

12

"child has been in extended out-of-home placement as a result of actions or inactions attributable to the parent." K.S.A. 2015 Supp. 38-2269(b)(9). The children have been in care since April 2014. The first 6 months thereafter, Father was incarcerated. One full year after he was released, Father has not made adequate progress on his case plan; thus, factor (b)(9) is a further basis for finding Father unfit. Father delayed crucial parenting tasks for 6 months after his release and showed little progress thereafter. His actions or inactions thus caused his children to be in extended out-of-home placement.

Having reviewed the record, we agree that a rational factfinder could have found it highly probable that Father is unfit and that his inability to care for his children is unlikely to change in the foreseeable future. K.S.A. 2015 Supp. 38-2269(a). We find no abuse of discretion in the district court's finding that termination would provide permanency and serve the best interests of the children. Accordingly, we affirm the district court's termination of Mother's and Father's parental rights.

Affirmed.