NOT DESIGNATED FOR PUBLICATION

No. 123,908

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of A.T., C.W., L.J.W., L.T.W., and L.T.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed February 4, 2022. Affirmed.

*Anita Settle Kemp*, of Wichita, for appellant natural father.

*Kristi D. Allen*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before GARDNER, P.J., BRUNS and CLINE, JJ.

PER CURIAM: The district court terminated Father's parental rights to his five children, A.T., C.W., L.J.W., L.T.W., and L.T. Father stipulated to being presently unfit, but he claims insufficient evidence supported the district court's finding that his unfitness is unlikely to change in the foreseeable future and that the termination of his parental rights is in the children's best interests.

We find sufficient evidence supports the court's determinations and affirm termination.

FACTS

The State petitioned the district court for emergency removal of A.T., C.W., L.J.W., L.T.W., and L.T. from their parents' care and for designation of the children as

1

children in need of care after L.J.W. sustained severe feet burns while taking a bath in Mother's care. The district court granted the petition and issued an ex parte order placing the children in the state's protective custody.

At the temporary custody hearing, both parents waived their right to an evidentiary hearing. The district court found probable cause existed to support the removal of the children from their care. The district court determined it was in the children's best interests to remain in the custody of the Department for Children and Families (DCF) and ordered out-of-home placement.

On March 26, 2018, Father entered a no-contest statement in response to the petition's allegations. The district court adjudicated the children as children in need of care, incorporating its temporary order findings, and found it was in the best interests of the children to remain in DCF temporary custody in an out-of-home placement. A disposition hearing took place on April 13, 2018, where the children were placed in DCF custody and ordered to remain in an out-of-home placement.

On March 7, 2019, the district court found the parents' progress toward reintegration inadequate and, having found reintegration no longer viable, directed the State to file a motion to terminate parental rights. The motion was filed and set for an evidentiary hearing.

On November 18, 2019, Mother and Father stipulated to present unfitness and agreed that, at any future hearing, the State would only be required to prove they would remain unfit for the foreseeable future. The district court found the parents were presently unfit for failure of reasonable efforts made by St. Francis Ministries to rehabilitate the family (K.S.A. 2020 Supp. 38-2269[b][7]); lack of effort on the part of the parents to adjust their circumstances, conduct, or conditions to meet the needs of the children (K.S.A. 2020 Supp. 38-2269[b][8]); and failure to carry out a reasonable reintegration

plan ordered by the court (K.S.A. 2020 Supp. 38-2269[c][3]). As part of its order, the district court issued the parents several directions, including maintain appropriate housing; notify St. Francis within 24 hours of obtaining housing and allow a walkthrough within 72 hours; maintain employment; submit to all drug tests within 24 hours of the request; contact St. Francis by 5 p.m. the day before a scheduled visit to confirm their intent to visit; and attend all the children's scheduled medical, dental, and therapy appointments.

The first termination of parental rights hearing took place on August 17, 2020, and September 28, 2020. Mother's rights were terminated, and she appealed. See *In re A.T.*, No. 123,690, 2021 WL 4128249 (Kan. App. 2021) (unpublished opinion). The district court found there was not clear and convincing evidence to terminate Father's rights at that time and continued his case to allow an investigation of newly raised sexual abuse allegations.

Father's termination hearing took place on March 1, 2021. Father testified he had moved since the last hearing but still lived with his girlfriend. Father did not allow St. Francis to visit his new home because he did not believe it would matter. He did not believe he would achieve reintegration with his kids.

As for employment, after Father was terminated from Spirit, he reported starting a business with a friend remodeling apartments. This job lasted about a month. Father also worked one day at Church's Chicken but chose not to return because it was not enough money. He did not have a job at the time of the hearing but testified he believed he would have one soon because he had filled out the "tax papers." He presented no evidence at the hearing about this job.

Father admitted he was discharged from his domestic violence and substance abuse classes for missing too many classes, though he disputed the number of classes he

missed. Father also admitted he had only completed one drug test requested by St. Francis since the last hearing. Father did not want to say why he did not do his last requested drug test.

Father admitted he missed four visits with A.T., the only child he had visitation with. Father said he knew missing those visits made A.T. feel bad, but it was okay because A.T. knew his father loved him and would be at the next one.

Father testified he believed his children should not have mental health diagnoses, and he did not know what his children's mental health issues were. When Father was asked how he would take care of five children when he could not show up for drug testing or finish his court-ordered classes, Father responded he would "just do it." Father admitted he had 10 children, but he could not remember any of their birthdays.

Grace Rossow, the current St. Francis family support worker, also testified. Rossow had been assigned to Father's case for about three months, during which Father had missed four visits with A.T. On two of those visits, Father cancelled 45 minutes to 1 hour before the scheduled time. Father did not contact Rossow at all when he missed his last visit. The visitation day and time were chosen at Father's request.

The reintegration supervisor, Meredith Whaley, testified Father made no progress on completing his case plan tasks since the last hearing. Whaley recommended termination of Father's rights because he showed an inability to recognize his children's needs and he failed to consistently follow through on what needed to be done. Whaley believed Father would be unable to get the children to their appointments each week.

The district court found there was clear and convincing evidence that Father would remain unfit for the foreseeable future, relying on K.S.A. 2020 Supp. 38-2269(b)(7)-(8),

4

(c)(2)-(3). The district court also found termination was in the best interests of the children and terminated Father's parental rights.

On appeal, Father argues the record lacks clear and convincing evidence to support the district court's termination of his parental rights. He says the district court was wrong to find he would remain unfit for the foreseeable future because he had shown progress in housing stability, maintaining employment, attending visits, working on classes, and trying to remain connected with his children. Father also argues termination was not in the children's best interests because they were very young with many years of childhood remaining, during which Father could continue to bond with them and be a significant part of their lives.

The State responds that the evidence showed Father's instability in housing, instability in employment, failure to complete his required classes, and failure to show he could meet the needs of his children, despite being given 39 months to do so. The State asserts termination was in the children's best interests because the children's behavior was substantially worse after visiting with Father, and their therapists believed termination of Father's rights would allow the children to achieve stability and improve their behavioral issues.

ANALYSIS

The termination of parental rights requires the State to demonstrate: (1) The parent is unfit as defined by Kansas law; (2) the parent's unfitness is unlikely to change in the foreseeable future; and (3) the termination of parental rights is in the children's best interests. See K.S.A. 2020 Supp. 38-2269(a) and (g)(1). Since Father stipulated to his present unfitness, we need only consider whether clear and convincing evidence supports the second finding and a preponderance of evidence supports the third. When undertaking our review of the record, we must view all evidence in the light most favorable to the

5

State. We do not weigh conflicting evidence, pass on witness credibility, or redetermine questions of fact. *In re K.H.*, 56 Kan App. 2d 1135, 1139, 444 P.3d 354 (2019).

*Father's unfitness is unlikely to change in the foreseeable future.*

In determining a parent's unfitness, the district court must consider, but is not limited to, the factors set forth by the Legislature in K.S.A. 2020 Supp. 38-2269(b) and (c). *In re K.H.*, 56 Kan. App. 2d at 1140. Here, the district court based its finding on four factors:

- The reasonable efforts of St. Francis to rehabilitate Father and the children failed. K.S.A. 2020 Supp. 38-2269(b)(7).
- Father's lack of effort to adjust his circumstances, conduct, or conditions to meet the needs of the children. K.S.A. 2020 Supp. 38-2269(b)(8).
- With his children not in his physical custody, Father's failure to maintain regular visitation, contact, or communication with his children or their foster parents. K.S.A. 2020 Supp. 38-2269(c)(2).
- With his children not in his physical custody, Father's failure to carry out a reasonable, court-approved plan to achieve reintegration of the children into Father's home. K.S.A. 2020 Supp. 38-2269(c)(3).

Any one factor, standing alone, may be enough to support the termination of parental rights. K.S.A. 2020 Supp. 38-2269(f).

In measuring the "foreseeable future" of a parent's unfitness, the court uses "child time" because children perceive time differently than adults. K.S.A. 2020 Supp. 38-2201(b)(4); *In re M.S.*, 56 Kan. App. 2d 1247, 1263, 447 P.3d 994 (2019). "[C]hildren experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a

6

prompt, permanent disposition." 56 Kan. App. 2d at 1263. Courts may look to a parent's past conduct as an indicator of future behavior. 56 Kan. App. 2d at 1264.

Clear and convincing evidence supports the district court's finding that Father would be unfit for the foreseeable future. This case began in 2017 and lasted for 39 months by the time of Father's termination hearing. In that time, Father failed to complete his reintegration plan, despite St. Francis' efforts to help him. While Father claims he was making progress in completing his plan by demonstrating housing stability, maintaining employment, attending visits, working on classes, and trying to remain connected to his children, the record does not support his claims. Father refused to schedule a walkthrough with St. Francis to approve the house he was living in, he was only sporadically employed and had no job at the time of the hearing, he missed four visits with A.T. in Rossow's three months working on the case, was discharged from his drug and domestic violence classes because he missed over 14 classes, and did not take drug tests when requested, except for one hair follicle test which ended up being insufficient to test for drugs.

K.S.A. 2020 Supp. 38-2269(b)(7) allows the termination of parental rights when reasonable efforts made by an agency to rehabilitate the family fail. K.S.A. 2020 Supp. 38-2269(c)(3) allows termination when the parent fails to carry out a reasonable plan ordered by the court. The evidence shows Father did not complete his reintegration plan despite having over three years to do so and with St. Francis making several efforts to help him. Almost six months elapsed between the first hearing, where Mother's rights were terminated and the hearing for Father was continued, and the second hearing where the district court terminated Father's rights. In that time, Father had made no progress in completing any part of his reintegration plan.

The evidence also shows a lack of effort by Father to adjust to his children's needs. See K.S.A. 2020 Supp. 38-2269(b)(8). Father did not know about any of his children's

mental health diagnoses or their medical needs. He missed four visits with A.T. that were scheduled for the days and times that Father requested. When he did attend visits with A.T., Father spent most of the time watching a video on his phone with little interaction with A.T.

Finally, as detailed above, Father did not maintain regular visitation with his children. See 2020 Supp. K.S.A. 38-2269(c)(2). In fact, Father was placed on the call-ahead procedure, requiring him to call ahead and confirm he would attend, because of his missed visits. Of his four missed visits, Father called 45 minutes to 1 hour before two visits to cancel, after Rossow had already picked up A.T., for one he gave about 2- or 3-hours' notice, and for the last one, Father provided no notice.

For three years, Father failed to complete his reintegration plan. Three years is a long time for young children. When the child in need of care petition was filed, A.T. was four years old, and C.W., L.J.W., L.T.W., and L.T. were all two years old or younger. A.T. has spent almost half his life, and the other children over half their lives, in foster care waiting for their parents to complete the reintegration plans. Father stipulated to being unfit and his actions show by clear and convincing evidence that fact is unlikely to change in the foreseeable future. The district court did not err in finding Father's unfitness was unlikely to change in the foreseeable future.

*Termination is in the best interests of the children.*

If a court finds a parent unfit, the court next considers whether termination of parental rights is in the best interests of the child. K.S.A. 2020 Supp. 38-2269(g)(1). "In making the determination, the court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2020 Supp. 38-2269(g)(1). If termination best serves the needs of the child, the district court must order termination of parental rights. K.S.A. 2020 Supp. 38-2269(g)(1).

We review a district court's finding that termination of parental rights is in the best interests of the child for abuse of discretion. A district court abuses its discretion if: (1) no reasonable person would agree with its ruling, (2) it commits an error of fact, or (3) it commits an error of law. *In re M.S.*, 56 Kan. App. 2d at 1264.

A district court's best interests finding must be supported by the preponderance of the evidence. 56 Kan. App. 2d at 1264. In considering the physical, mental, and emotional health of the children, "the court must weigh the benefits of permanency for the children without the presence of their parent against the continued presence of the parent and the attendant issues created for the children's lives." *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010). The district court must consider the nature and strength of the relationships between the child and the parent and the trauma that termination may cause the child and weigh those consideration against further delay in finding permanency for the children. 43 Kan. App. 2d at 904.

The district court did not abuse its discretion in determining termination was in the best interests of the children. C.W., L.J.W., and L.T.W.'s therapist reported L.J.W. got defensive and raised her voice when asked about Father; L.T.W. became verbally and physically aggressive; and C.W. retreated into a frightened and scared state. L.T. disclosed to his therapist that Father physically abused him and he was scared of Father. L.T.'s therapist reported his behavioral issues have improved since visits with Father stopped.

Whaley testified that termination is always difficult for children because it ends one of their most important relationships. But she believed the effect of a lack of permanency for these children was a greater concern.

This case lasted 39 months before Father's rights were terminated. In that time, the children hung in limbo, waiting to learn of their future. Father did not make significant

9

progress toward reintegration. The children have shown behavioral improvements when they are not around Father. We find no error in the district court's finding that termination was in the children's best interests.

Terminating a parent's rights is a difficult decision, and Father's testimony shows he cares about his children. "But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008).

Father's actions show his unfitness is unlikely to change in the foreseeable future, and permanency is in the children's best interests. We affirm the district court's termination of Father's parental rights.

Affirmed.