NOT DESIGNATED FOR PUBLICATION

No. 115,962

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of

J.R.B., J.A.T., and J.L.T., MINOR CHILDREN.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DANIEL T. BROOKS, judge. Opinion filed April 21, 2017. Affirmed.

*Anita Settle Kemp*, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before BUSER, P.J., MCANANY and STANDRIDGE, JJ.

*Per Curiam*:  This is an appeal of a parental termination case by G.B., the biological mother of J.R.B. (YOB 2002), J.A.T. (YOB 2006), and J.L.T. (YOB 2008). Following a bench trial, the district court found G.B. unfit under K.S.A. 2016 Supp. 38-2269(b)(1), (2), (3), (4), and (8), and also determined that this condition was unlikely to change in the foreseeable future. Finally, the district court determined that terminating G.B.'s parental rights was in the best interests of her three children. G.B. appeals.

FACTUAL AND PROCEDURAL BACKGROUND

On February 15, 2014, while at the family home, J.R.B. sustained chemical burns to her face, neck, and scalp. Despite the obvious severity of the burns, G.B. did not call for emergency medical assistance or take J.R.B. to the hospital or doctor's office. School

1

officials noticed the burns on J.R.B. and contacted authorities. As a result, on February 19, 2014, Officer Christopher Hornberger and another officer conducted a welfare check at G.B.'s home.

At the home, Officer Hornberger observed "very poor living conditions." In his words, "The house was very filthy, we noticed cockroaches, trash everywhere throughout the residence, extremely dirty kitchen, there were faucets that were leaking [and] it appeared . . . the electricity was being [run] through an extension cord." Officer Hornberger also noticed that G.B. apparently heated her home with the kitchen stove. G.B. advised that J.R.B., J.A.T., and J.L.T. all slept in a single bedroom with her.

Officer Hornberger observed J.R.B. and immediately noted numerous chemical burns on her face that were partially covered "with a large amount of women's makeup." When asked about the burns, G.B. explained that she stored a chemical solution in a spray bottle and that J.R.B. had accidentally sprayed the solution on her face and head. G.B. admitted that she had not sought medical treatment for J.R.B. The police officers placed the children in protective custody and transported J.R.B. to a local hospital for treatment.

The State filed a child in need of care (CINC) petition relating to all three children, which G.B. did not contest. On April 18, 2014, the district court found all three children were in need of care. Temporary custody of the children was placed with the Kansas Department of Children and Families.

In accordance with a reintegration case plan, G.B. visited the children in protective custody during April 2014, until J.R.B. informed social workers that G.B. frequently beat her and her siblings, and that, as a form of discipline, G.B. had poured the chemical solution on her head which caused the burns. Based in part on information provided by

2

J.R.B., on May 12, 2014, G.B. was charged with three counts of abuse of a child, a severity level 5 person felony in violation of K.S.A. 2016 Supp. 21-5602(a)(3).

In keeping with a plea agreement, on November 13, 2014, G.B. entered a no contest plea to one count of abuse of a child (J.R.B.) and was found guilty. On January 8, 2015, she was sentenced to 36 months' probation with an underlying prison term of 32 months, and 24 months' postrelease supervision. G.B. was given credit for 190 days of jail time that she served while awaiting disposition of the criminal case.

The parties attempted reintegration without success, and on April 13, 2015, the State filed a motion to terminate G.B.'s parental rights. Trial was held on January 19, January 20, and February 2, 2016. In a journal entry issued on March 24, 2016, the district court found G.B. unfit under K.S.A. 2016 Supp. 38-2269(b)(1), (2), (3), (4), and (8), and determined that this condition was unlikely to change in the foreseeable future. The district court also concluded that terminating G.B.'s parental rights was in the best interests of her three children. Accordingly, G.B.'s parental rights were terminated.

G.B. filed this appeal.

THE DISTRICT COURT'S FINDING THAT G.B. WAS UNFIT UNDER
K.S.A. 2016 Supp. 38-2269 WAS SUPPORTED BY CLEAR
AND CONVINCING EVIDENCE

On appeal, G.B. contends the district court did not possess clear and convincing evidence that she was "unfit by reason of conduct or condition" and that such condition rendered her "unable to care properly for [the children] and the conduct or condition [was] unlikely to change in the foreseeable future." K.S.A. 2016 Supp. 38-2269(a).

A district court may terminate parental rights if the court finds "by clear and convincing evidence that the parent is unfit by reason of conduct or condition which

3

render the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2016 Supp. 38-2269(a).

In reviewing a district court's decision terminating parental rights, an appellate court shall consider "whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that [the parent's rights should be terminated.]" *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). Clear and convincing evidence is "an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt." 286 Kan. at 691. In our review, appellate courts do not reweigh the evidence, judge the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705.

In order to terminate parental rights, the district court must find the moving party has proven three elements by clear and convincing evidence: (1) the parent is unfit, (2) the conduct or condition which renders the parent unfit is unlikely to change in the foreseeable future, and (3) termination of parental rights is in the best interests of the child. K.S.A. 2016 Supp. 38-2269(a), (g)(1). When considering whether a parent is unfit under K.S.A. 2016 Supp. 38-2269(b), district courts consider a list of nine nonexclusive factors. The existence of any one of these factors may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2016 Supp. 38-2269(f). In this case, the district court considered all of the statutory factors and found G.B. unfit based on five of them as listed in K.S.A. 2016 Supp. 38-2269(b)(1), (2), (3), (4), and (8).

We will consider the five statutory factors which the district court found proved G.B.'s unfitness to determine whether those findings were supported by clear and convincing evidence.

*1. Emotional illness, mental illness, mental deficiency, or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental, and emotional needs of the child. (K.S.A. 2016 Supp. 38-2269[b][1])*

G.B. contends the "record on appeal lacks any support that [she] had any 'emotional illness, mental deficiency, or physical disability' that would render her unable" to care for her children. The district court, however, found "the State has met conditions for (b)(1), that [G.B.] really is emotionally disabled. She really cannot admit her history, her responsibility."

Trial evidence showed that G.B. suffered from serious mental and emotional problems. While testifying at trial, G.B. stated that she had been diagnosed with post-traumatic stress disorder, depression, and anxiety. A therapy report introduced into evidence stated that G.B. was "struggling with anxiety and depression, and experiencing a number of life stressors." The report continued:  "It is important to note that the disorders . . . [that G.B.] meets criteria for (PTSD [post-traumatic stress disorder], Major Depressive Disorder, Stimulant use disorder, and Panic disorder) are chronic and severe mental health conditions."

As detailed in the next section, despite ample evidence that she abused her children in a variety of ways, G.B. testified her children were placed in protective custody simply because J.R.B. "got a burn, and [I] didn't get medical attention right away [and because my] house was dirty." When asked, "And even though you have been convicted of child abuse, you're not willing to admit to child abuse; are you?" G.B. responded, "No, because I didn't."

At trial, the State presented several witnesses, who testified regarding G.B.'s refusal to acknowledge her wrongdoing. Jennifer Beatson, a reintegration social worker at St. Francis Community Services who oversaw G.B.'s attempted reintegration, testified that G.B. "adamantly denied doing anything [wrong] to the [children] and said she would

not admit to doing something just to start visitation." Beatson also noted that, during their meetings, G.B. "did not accept accountability for her actions."

The district court related G.B.'s refusal to acknowledge her abuse of the children to her emotional illness:

> "This is disturbing in light of [G.B.'s] own history. She herself was removed from an abusive situation, had to be adopted by relatives, and the Court surmises that there is deep—surmises she's got a diagnosis, post-traumatic stress, which is consistent with that, and also we have to take into account [G.B.'s] inability to admit this."

As detailed in the next section, the district court was presented with numerous instances of G.B.'s abuse and neglect of her children. Yet, G.B. was unable to acknowledge her abuse. Considered together, there was clear and convincing evidence to support the district court's conclusion that G.B.'s long-standing and serious mental and emotional problems rendered her unable to care for the needs of her children as set forth in K.S.A. 2016 Supp. 38-2269(b)(1).

*2. Conduct toward the child of a physically, emotionally, or sexually cruel or abusive nature (K.S.A. 2016 Supp. 38-2269[b][2]), and physical, mental, or emotional abuse or neglect or sexual abuse of a child. (K.S.A. 2016 Supp. 38-2269[b][4])*

The district court found clear and convincing evidence that G.B. was unfit due to two separate but related factors, K.S.A. 2016 Supp. 38-2269(b)(2) and (b)(4). In addressing these two statutory factors, G.B. and the State discuss the same evidence and make similar arguments. As a result, we will analyze these factors together.

G.B. contends there was not clear and convincing evidence that she abused the children, especially J.R.B. But the district judge concluded that G.B. "either did these injuries or was there. She either—I believe she knew, but if she can tell herself she didn't

6

know, she should have known." Of note, with regard to the chemical burn sustained by J.R.B., the district judge stated, "I'm not basing my decision on that particular incident" because the district judge did not find "there is clear and convincing evidence that [G.B.'s] version is not true." But the district court found, "What is, however, true beyond clear and convincing evidence is that [J.R.B.], in particular, and to a lesser extent her younger sibling, [J.R.B.] has had long and consistent physical abuse, long and consistent physical abuse."

The trial evidence was not limited to the chemical burn incident involving J.R.B., but instead demonstrated continuous child abuse involving all three children. Alison Despard, a family support worker with St. Francis Community Services, interacted with all three children while they were in protective custody and supervised visits between G.B. and the children. She testified the visits ceased after J.R.B. "made disclosure[s] to [her] about physical abuse."

In particular, J.R.B. advised that G.B. would "hit her with sticks on her back . . . hit her with belts [and that] oftentimes [J.R.B.] would hide the belts and she would get in trouble for that, and that [G.B.] would use extension cords to beat her." According to Despard, J.R.B. stated she was "beat every night by [G.B.]" and that "she was afraid to go to sleep at night out of fear she would be beaten, so she would stay awake." J.R.B. also related that she received the chemical burns when she "[got] in trouble" and G.B. threw bleach on her head. G.B. then told J.R.B. to go to "school and tell them that she had been burned in the shower." Another time, G.B. broke J.R.B.'s tooth when she "smashed [J.R.B.'s] face into a wall." G.B. told J.R.B. "to tell the school . . . that her sister [J.L.T.] had hit her in the mouth with a toy."

The trial evidence also established that G.B. abused the other two children, J.L.T. and J.A.T. For example, G.B. tried to hang J.L.T. with an extension cord after J.L.T. "talk[ed] to people about what was happening at home." Of note, as a 5-year-old, J.L.T.

7

weighed only 19 pounds when she entered protective custody. Despard stated that, in protective custody, J.LT.'s weight had increased to 32 pounds but that she was still "very small for her age" and that there were "safety precautions put in place [at school] because . . . she can't open [doors] on her own."

J.A.T., an 8-year-old child with cerebral palsy, "was completely dependent on a wheelchair" when she first came into protective custody and "wasn't potty-trained." Despard testified that since J.A.T. entered protective custody "[she] is now able to walk on her own. She's almost fully potty-trained. We've noticed that she is able now to say what she wants and needs, when prior to custody she would often bang her head and just scream."

The State presented expert medical testimony from Dr. Kerri Weeks, a pediatrician who specializes in child abuse pediatrics at the University of Kansas School of Medicine in Wichita. Dr. Weeks evaluated J.R.B. shortly after she arrived at the hospital. J.R.B. was sedated because of the pain associated with her burn treatments. Dr. Weeks observed that the burns were deep partial thickness burns and, given the delay in treatment, there was a risk of infection and scarring.

Apart from the chemical burns sustained by J.R.B., Dr. Weeks also observed "multiple, too numerous to count, pattern marks and loop marks over [J.R.B.'s] back, her arms, her thighs." Dr. Weeks noted such marks were "very characteristic of abusive injury." Some of these markings were "consistent with being struck with a cord or a belt," while others were "consistent with being struck with a rod or some other linear structure." The markings were also at various stages of healing, which, Dr. Weeks testified, suggested ongoing abuse. Based on Dr. Weeks' clinical examination it was her medical opinion that J.R.B. was the victim of physical abuse and neglect.

8

The record amply demonstrates a pattern of cruel physical abuse and neglect by G.B. towards her children, especially J.R.B. We are convinced the district court had clear and convincing evidence to find G.B. unfit under K.S.A. 2016 Supp. 38-2269(b)(2) and (b)(4).

*3. Use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child. (K.S.A. 2016 Supp. 38-2269[b][3])*

On appeal, G.B. acknowledges her prior drug use but states, "the usage was prior to the filing of the CINC case and the removal of her children. With the exception of two positive tests [during] her probation, she has remained drug free."

At trial, the following colloquy occurred between the State's counsel and G.B.:

"A.     I'm not going to lie, we [G.B. and Chancelor Brooks] did a lot of drugs together, so, like, with—with [J.R.B.], like, not getting medical attention, if I wasn't high, she would have got the medical attention, but I was high and I wasn't thinking. So, like, I—I don't—like, I can't remember—like, I can't remember every incidence of everything that was going on, because—

"Q.     Okay. And I noticed that your answer was 'I don't remember' to a lot of the questions. Is that because you were high on drugs most of the time?

"A.     Most of the time I was."

This testimony was noted by the district court in its finding of termination when it observed, "[G.B.] admits she was in a drug haze sometimes."

G.B. was placed on probation on January 8, 2015. On February 27, 2015, however, G.B. signed a document acknowledging that she violated her probation by using the drug butalbital. As a consequence, G.B. agreed to serve a 72-hour jail sanction. It is noteworthy that—almost 1 year earlier—on the day J.R.B. sustained chemical burns,

9

February 15, 2014, G.B. was, by her own admission, using drugs. This incident precipitated the CINC litigation and removal of her three children from the home. G.B. then served 6 months in jail awaiting trial on child abuse charges. Still, within weeks of her release on probation on January 8, 2015, and during the process she was attempting to reintegrate with her children, she was, once again, using illegal drugs.

The record supports the district court's finding based on clear and convincing evidence that G.B.'s use of narcotic or dangerous drugs was of long duration and was continuing during this litigation. As a consequence, there was a sufficient showing that G.B. was unable to care for her children.

*4. Lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child. (K.S.A. 2016 Supp. 38-2269[b][8])*

Finally, G.B. contends there was not clear and convincing evidence that she was unfit under K.S.A. 2016 Supp. 38-2269(b)(8). She argues that she "has made every effort to 'adjust her circumstances, conduct and conditions' to meet the needs of her children [because she has] successfully completed drug treatment, parenting, anger management and domestic violence classes." G.B. also asserts that the State "never made any 'reasonable efforts' to reunify the family."

The district court's finding that K.S.A. 2016 Supp. 38-2269(b)(8) was applicable in this case was supported by the evidence. During the termination trial, Amy Otey, a social worker and supervisor for St. Francis Community Services, testified that an essential aspect of reintegration was that "[G.B.] admit to the abuse that occurred in the home." Such an admission was important, Otey said, "in order to make sure that change could happen, that [G.B.] could admit that it happened, then work through that." According to Beatson, G.B. understood that in order to have visitation with her children she needed to acknowledge her abusive behavior. Still, according to Beatson, "[G.B.]

10

adamantly denied doing anything [wrong] to the [children] and said she would not admit to doing something just to start visitation." G.B.'s intransigence, in the face of substantial evidence of child abuse and neglect, was important evidence that she made insufficient efforts to change her conduct in order to meet her childrens' needs.

Additionally, as discussed in the prior section, G.B.'s drug usage was directly related to the abuse and neglect of her children. This drug usage continued unabated during the attempt at reintegration. This illegal behavior provided additional support for the claim that G.B. did not make sufficient efforts at changing her ways in order to meet the needs of her children.

We conclude there was clear and convincing evidence to support the district court's finding that G.B. did not make sufficient efforts at adjusting her circumstances, conduct, or conditions to meet the needs of her children. See K.S.A. 2016 Supp. 38-2269(b)(8).

On a related matter, G.B. briefly claims there was insufficient evidence to support the district court's finding that G.B. was unfit because of a felony conviction and imprisonment. See K.S.A. 2016 Supp. 38-2269(b)(5). However, as the State points out, and the record confirms, the district court did not make this finding with regard to the unfitness of G.B. G.B.'s claim is without any factual basis.

THE DISTRICT COURT'S FINDING THAT THE CONDUCT OR CONDITION WHICH RENDERS THE PARENT UNFIT IS UNLIKELY TO CHANGE IN THE FORESEEABLE FUTURE

Although not separately briefed as an appellate issue, G.B. argues at points that there was insufficient evidence for the district court to find that her conduct or condition rendered her unfit to change in the foreseeable future.

Kansas law provides that a court may predict a parent's future unfitness based on his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). Additionally, the term foreseeable future is measured from the child's perspective and takes into account a child's perception of time. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009).

Despard informed the district court that J.R.B. had an extreme fear of G.B. Despard also told the district court that, in her opinion, G.B.'s parental rights should be terminated because she had not made the necessary changes to insure that the abuse would not continue if the children were returned to the home. According to her, she did not feel comfortable "sending [the children] home." Despard opined that J.R.B. might not have lived had she continued to stay in G.B.'s home. Beatson testified that termination was in the best interests of the children for their own safety due to the extent of physical abuse and G.B.'s inability to acknowledge the abuse and modify her behaviors.

The district judge specifically addressed how G.B.'s unfitness was unlikely to change in the foreseeable future:

> "[G.B.] needs to know herself well enough that she can deal with the truth and start that with the children. She has not been able to do that. And I think this is—given where we are today that this is unlikely to change in the foreseeable future. [J.R.B.] cannot live her life in suspense, hoping that [G.B.] will somehow come to recognize the truth."

The record shows that the children's abuse and neglect were longstanding. G.B.'s emotional and mental conditions were chronic and severe, and her drug problems persisted throughout the litigation. Importantly, during the attempted reintegration, G.B. either refused or was unable to confront her abuse and neglect. As detailed earlier, in the estimation of the social workers familiar with this case, this fact prevented her from effecting the changes necessary to parent her children in the future.

12

Based on G.B.'s past abuse and neglect, her continued illicit drug use, her mental and emotional status, and the opinions of social workers familiar with G.B.'s family, clear and convincing evidence supported the district court's finding that her unfitness was unlikely to change in the foreseeable future.

## THE DISTRICT COURT'S FINDING THAT TERMINATION WAS IN THE BEST INTERESTS OF THE CHILDREN

Although not specifically identified as an appellate issue, it appears that G.B. challenges the district court's finding that terminating her parental rights was in the children's best interests. See K.S.A. 2016 Supp. 38-2269(g)(1). The district court is in the best position to determine the best interests of the children, and we review that decision for an abuse of discretion. A district court abuses its discretion only when it bases its decision on an error of fact or law or when its decision is so unreasonable that no one would agree with it. *In re M.H.*, 50 Kan. App. 2d 1162, 1175, 337 P.3d 711 (2014). The party asserting an abuse of discretion bears the burden to prove the abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

In making a determination of the best interests of the child, "the court shall give primary consideration to the physical, mental, and emotional health of the child. If the physical, mental, or emotional needs of the child would be best served by termination of parental rights, the court shall so order." K.S.A. 2016 Supp. 38-2269(g)(1). See *In re K.R.*, 43 Kan. App. 2d 891, 903, 233 P.3d 746 (2010). The court should consider the relationship between the parent and children and the trauma that may be caused by termination. 43 Kan. App. 2d at 904. In addition to the relationship between parent and child, we also consider any detriment to the physical, mental, or emotional health of a child if parental rights are not terminated, as well as the benefits of permanency. See K.S.A. 2016 Supp. 38-2269(g)(1); *In re K.R.*, 43 Kan. App. 2d at 904.

In this case, G.B. failed to establish an abuse of discretion by the district court in finding that it was in the children's best interests to terminate her parental rights. As noted earlier, J.R.B. had a continuing fear of being harmed by her mother. Moreover, G.B.'s serious mental and emotional problems, coupled with her inability to remain drug-free, clearly put her children at additional risk if they were returned to G.B.'s home. Finally, evidence that the children made important emotional and developmental progress since being removed from G.B.'s home also supported the finding that termination was in their best interests. For these reasons, we find no abuse of discretion in the district court's finding that it was in the best interests of the children to terminate G.B.'s parental rights.

Affirmed.