NOT DESIGNATED FOR PUBLICATION

No. 119,030

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE INTERESTS OF
T.D.H., M.B.F., AND M.B.F.,
MINOR CHILDREN.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed August 3, 2018.
Affirmed.

*Jordan E. Kieffer*, Dugan & Giroux Law, Inc., of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, for appellee.

Before GARDNER, P.J., GREEN and SCHROEDER, JJ.

PER CURIAM: Mother appeals the termination of her parental rights to her
daughters, T.D.H. and M.B.F., and her son, Ma.B.F. She contends there was not clear and
convincing evidence supporting the district court's decision to terminate her parental
rights. After reviewing the evidence presented at her termination hearing, we disagree.
The State presented sufficient evidence for the district court to find, by clear and
convincing evidence, Mother was unfit and termination of her parental rights was in the
best interests of the children. Thus, we affirm.

Following allegations that Mother's boyfriend, M.T., had sexually abused six
children, the State petitioned to declare T.D.H., M.B.F. and Ma.B.F. children in need of
care (CINC). The district court adjudicated all three children CINC. A little more than a

1

year after the CINC petition, the State filed motions for termination of parental rights. The petitions alleged Mother was unfit pursuant to K.S.A. 2017 Supp. 38-2269(b)(4), (7), (8), and (c)(3).

The hearing on the State's termination motion occurred on October 23, 2017. At that time, T.D.H. was 14 years old and M.B.F. and Ma.B.F. were 13 years old. Mother also has four other children: K.C., S.M., C.L.H., and C.D.H.; of these, only C.D.H. was still a minor. In August 2017, S.M., C.L.H., and C.D.H. were all in either prison or juvenile detention facilities. All three were living with Mother when they were arrested.

Mother admitted to living with M.T. when the children were removed from the home. He allegedly sexually abused at least one of the children. Mother no longer lived with M.T. but denied her children told her M.T. was touching them. Mother denied M.T. did inappropriate things with her children. Mother also acknowledged K.C. was sexually abused by a relative when she was 15 or 16 years old. K.C. also alleged M.T. was the father of children she conceived while a minor.

Mother explained C.D.H. was in a juvenile detention facility after he shot himself in the leg at her residence two months before the termination hearing. Mother was unaware C.D.H. had a gun. At the time, C.D.H. and his girlfriend lived with Mother. C.D.H., who was 16 years old, had two children with his 18-year-old girlfriend.

Mother testified she did not know the names of any of her caseworkers. Mother explained she never really talked with her current caseworkers. Mother admitted her caseworkers told her she could call at any time if she had problems but she blamed the failure to communicate on both herself and her caseworkers.

Mother stated she had visits with T.D.H., M.B.F., and Ma.B.F. for an hour every Monday. During visits they talked or looked at things on her phone. Mother never asked

2

for visits to be extended, but testified she wanted longer visits. Mother did not know the name of any of her children's schools.

Mother testified she had two beds in her current residence. When Mother has chemotherapy, her son's girlfriend stays with her to help take care of her. Mother indicated St. Francis told her that her current residence was appropriate for the children. Mother also noted she had obtained beds for each of the children.

Mother testified she did not complete a mental health assessment because she believed she had already completed one. She did not realize St. Francis also wanted her to complete a clinical evaluation. But Mother also testified she did not set up a clinical evaluation because it cost $100 and she did not have the money. She did not contact St. Francis to see if they could help pay for the evaluation. Additionally, Mother stated she participated in both individual and family therapy.

Despite K.C.'s multiple instances of sexual abuse, C.D.H. and C.L.H. being incarcerated, and C.D.H. shooting himself at her home, Mother believed her house was a safe place for children. She believed she had changed. She testified she knew how to control her anger, commenting that, if she did not know how to control it, she "would have popped [the prosecutor]." Mother believed she would be a better mother to her kids and would pay close attention to what her children were doing.

Bethany Owens, the family's therapist, testified she provided family therapy immediately before the weekly visits. At the time of the termination proceeding, she had conducted five therapy sessions. She indicated the family denied any problems with communication, discipline, or problem solving so it was difficult to identify goals for therapy. Owens noted Mother made a few attempts to get the children to pay attention and participate in therapy but was ineffective. Mother did not say anything when M.B.F. encouraged T.D.H. to keep fighting. Owens suggested Mother had a "permissive"

3

parenting style and did not discipline the children. Owens also noted the family was well-bonded and loved each other. She believed she could potentially see recommending reintegration sometime in the future.

Rebecca Thrush, Mother's caseworker from September 2016 until May 2017, testified M.B.F. and Ma.B.F. reintegrated into their father's home in October 2016. She testified Mother was not close to reintegration at that time; she had only completed parenting classes. Thrush also had concerns about Mother's visitations because she often brought additional people or discussed C.L.H. and C.D.H.'s criminal cases with the children. Thrush also had concerns because Mother did not correct the children's behavior and did not seem to engage with them about their lives. Thrush testified Mother did not maintain consistent contact and often had her phone turned off or provided St. Francis with new phone numbers. Thrush also testified Mother told her she still loved M.T. Thrush described Mother's parenting style as "more of a friend than a parent."

Amanda Lerback, Mother's current caseworker, also testified. She testified M.B.F. and Ma.B.F. came back into the Department of Children and Families (DCF) custody and she was eventually assigned as the caseworker for all three children. Lerback indicated she was concerned with the lack of documentation in St. Francis' system after she received the case and recommended giving Mother more time to make progress. She believed Mother was making progress. However, she subsequently developed concerns regarding Mother's residence and the lack of secondary change. Lerback did not believe reintegration was viable now or in the foreseeable future.

T.D.H. and M.B.F. had adoption resources available, but Ma.B.F. did not. Lerback acknowledged it was possible all three children would age out of the system. She also acknowledged all three children's current placements were stable, so they would not be moving anywhere yet.

4

The district court found, by clear and convincing evidence, Mother was unfit. The district court determined termination of parental rights was in the best interests of the children. Specifically, the district court found K.S.A. 2017 Supp. 38-2269(b)(4), (7), (8) and (c)(3) applied. It found Mother failed to provide a safe and stable living environment for the children and noted multiple instances of sexual abuse in Mother's home. It also noted Mother was unaware there was a gun or marijuana in her house. The district court found DCF made extensive efforts to assist Mother in stabilizing her life but Mother had not progressed. It also found Mother's testimony on many issues to be not credible. The district court terminated Mother's parental rights. Mother appealed.

A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to make decisions regarding the care, custody, and control of the parent's child. Before a parent can be deprived of the right to the custody, care, and control of the child, the parent is entitled to due process of law. *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008); see *In re X.D.*, 51 Kan. App. 2d 71, 73-74, 340 P.3d 1230 (2014) (the right to be the legal parent of a child is a fundamental right).

The Kansas Legislature has specified that the State must prove "by clear and convincing evidence that the child is a child in need of care." K.S.A. 2017 Supp. 38-2250. In addition to CINC adjudications, the clear and convincing evidence standard of proof applies to all termination of parental rights cases. K.S.A. 2017 Supp. 38-2269(a).

> "When this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's right should be terminated. [Citation omitted.]." *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011).

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

The Revised Kansas Code for Care of Children provides that the court may terminate parental rights when a child has been adjudicated a CINC. K.S.A. 2017 Supp. 38-2269(a). The statute lists nonexclusive factors the court shall consider in determining unfitness. K.S.A. 2017 Supp. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 2017 Supp. 38-2269(c). Any one of the factors in K.S.A. 2017 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2017 Supp. 38-2269(f).

The nonexclusive factors listed in K.S.A. 2017 Supp. 38-2269 include, in relevant part:

>"(b) . . . .
>
>> (4) physical, mental or emotional abuse or neglect or sexual abuse of a child;
>>
>> . . . .
>>
>> (7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;
>>
>> (8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and
>>
>> (9) whether the child has been in extended out of home placement as a result of actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply.
>
>"(c) In addition to the foregoing, when a child is not in the physical custody of a parent, the court, shall consider, but is not limited to, the following:
>
>> . . . .

(3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home."

The district court found K.S.A. 2017 Supp. 38-2269(b)(4) applied because Mother "failed to provide a safe and stable living environment for her children." It found K.S.A. 2017 Supp. 38-2269(b)(7) applied because the court, DCF, and St. Francis made extensive efforts to assist Mother in stabilizing her life with very little progress. The district court found Mother did not make an effort to adjust her circumstances. Finally, it found K.S.A. 2017 Supp. 38-2269(c)(3) applied because Mother failed to obtain suitable housing and had no control over the children.

On appeal, Mother argues the district court's decision is unsupported by clear and convincing evidence. Instead, she asserts she "demonstrated progress in every single area the district court cited." Citing various parts of her testimony, Mother contends she had moved to an appropriate home St. Francis approved of. She also asserted she was a "totally changed" person who no longer associated with the alleged sexual abuser. Finally, Mother alleged the case plan tasks were unclear and confusing which "substantially hindered" her ability to complete case plan tasks. Mother essentially asks this court to reweigh the evidence and find in her favor. We cannot.

When determining whether factual findings are supported by clear and convincing evidence, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705. The district court said: "The Court does not find, again, based upon the demeanor of the witnesses, hearing the testimony as a whole, I do not find the respondent's testimony in a lot of areas to be credible." Thus, we cannot rely on Mother's testimony instead of the other witnesses. Even if the district court had not made this credibility determination, Mother would not have been entitled to relief. Viewed in the light most favorable to the State, clear and convincing evidence supports the district court's decision.

7

There was clear and convincing evidence Mother failed to provide a safe and stable living environment for her children. Just a few months before trial, C.D.H., Mother's 16-year-old son, shot himself in the foot while Mother was home and is now residing at a juvenile detention facility. The two older children living in the home have been charged with murder in separate incidents. Mother did not believe M.T. touched any of her children inappropriately and did not realize M.B.F. and T.D.H. testified at M.T.'s trial. Mother acknowledged her sister's husband sexually assaulted her oldest daughter, K.C., in her home when K.C. was 15 or 16 years old. In addition, K.C. filed a paternity action against M.T. alleging he was the father of at least two of her children, who she conceived while under the age of 18. Furthermore, Lerback testified she had concerns with Mother's housing based on the number of bedrooms, its size, and the recent presence of guns and drugs.

Similarly, there was clear and convincing evidence St. Francis made extensive efforts to rehabilitate the family and Mother failed to carry out a reasonable plan toward the reintegration of the children into her home. Mother failed to maintain regular contact with St. Francis and did not know her caseworkers' names. Thrush testified she did not see progress during her tenure as Mother's caseworker. Lerback did not see any secondary change; Mother never put what she had learned into action.

Finally, there was clear and convincing evidence Mother did not make an effort to adjust her circumstances, conduct, or conditions to meet her children's needs. Mother was ineffective at getting the children to pay attention and participate during therapy. Mother did not respond when one of the children encouraged T.D.H. to fight. Mother has a permissive parenting style and does not discipline her children. The family has denied any problems with communication, discipline, or problem solving.

Viewed in the light most favorable to the State, there is clear and convincing evidence supporting the district court's termination of Mother's parental rights. She failed

8

to provide a safe and stable living environment for her children. Mother failed to carry out a reasonable plan toward the reintegration of the children and did not make an effort to adjust her circumstances, conduct, or conditions to meet her children's needs. Furthermore, despite Mother's assertions otherwise, there is no evidence she would be fit in the foreseeable future. Both Thrush and Lerback, Mother's caseworkers from September 2016 until the termination hearing, testified they saw no secondary change in Mother's behavior; she never acted on the information she learned. Clear and convincing evidence supports the district court's finding of unfitness.

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2017 Supp. 38-2269(g)(1). In making such a decision, the court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2017 Supp. 38-2269(g)(1). "[T]he court must weigh the benefits of permanency for the children without the presence of their parent against the continued presence of the parent and the attendant issues created for the children's lives." *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010). The district court is in the best position to make findings on the best interests of the children; its judgment will not be disturbed absent an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). "A district court abuses its discretion when no reasonable person would agree with its decision or the decision is based on a legal or factual error." *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 2, 336 P.3d 903 (2014).

Mother argues termination of her parental rights was not in the children's best interests. Since some of the children had only recently been placed in foster care and there was a "real likelihood" the children would age out of the system, Mother asserts she should have been given more time to demonstrate further progress. However, this case has gone on for 19 months. Mother's visits with the children never progressed beyond one hour of supervised visitation per week. Mother failed to make progress through her case

plan. She showed no signs of secondary change. The children deserve stability and permanency that Mother cannot provide. A reasonable person could agree, based on all of the facts outlined herein, with the district court's decision to terminate parental rights. The district court did not abuse its discretion.

Affirmed.