NOT DESIGNATED FOR PUBLICATION

Nos. 118,746
118,747
118,748

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE INTERESTS OF O.U.J.S., M.F.S., and I.D.C.S.,
MINOR CHILDREN.

MEMORANDUM OPINION

Appeal from Crawford District Court; LORI BOLTON FLEMING, judge. Opinion filed August 10, 2018. Affirmed.

*Geoffrey Clark*, of Mason & Clark, LLC, of Fort Scott, for appellant.

*Michael Gayoso, Jr.*, county attorney, for appellee.

Before SCHROEDER, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM: Mother appeals the termination of her parental rights to her three youngest children, O.U.J.S, M.F.S., and I.D.C.S. The district court found, based on clear and convincing evidence, the presumptions under K.S.A. 2017 Supp. 38-2271(a)(5) and (6) applied because all of the children had been out of the home for more than a year. The district court also found by clear and convincing evidence Mother was unfit under K.S.A. 2017 Supp. 38-2269(b)(3), (8), (9), and (c)(2)-(4), and the court concluded that it was in the best interests of the children to terminate her parental rights. Upon review of the record in a light most favorable to the State, as we are required to do, we find no error in the district court's ruling. We affirm.

1

FACTS

In 2014, at O.U.J.S.'s birth, he tested positive for drugs. Mother also tested positive. The State moved to declare him a child in need of care (CINC). In 2015, the State moved to declare M.F.S., Mother's three-year-old daughter, a CINC. In 2016, the State moved to declare I.D.C.S. a CINC immediately after he was born. The district court found all three to be CINC.

In April 2017, the State moved to find Mother and Father unfit and terminate their parental rights. It alleged Mother had sporadic visitation with the children, had numerous failed or "no showed" urinalysis (UA) appointments, had inconsistent contact with KVC, and had failed to complete reintegration case plan tasks.

The State alleged the district court should apply a presumption of unfitness under K.S.A. 2017 Supp. 38-2271(a)(5) because the children had been in out-of-home placement for more than a year and the parents had substantially neglected or willfully refused to carry out a reasonable plan directed toward reintegration of the children. It also alleged a presumption of unfitness existed based on K.S.A. 2017 Supp. 38-2271(a)(6) because O.U.J.S. and M.F.S. had been in out-of-home placement more than 2 years, the parents had failed to carry out a reasonable reintegration plan, and there was a substantial probability they would not carry out such a plan in the near future. The State further alleged Mother's drug use rendered her unable to care for the physical, mental, or emotional needs of the children; she failed to adjust her circumstances to meet the needs of the children; she failed to maintain regular visitation; and she failed to pay a reasonable portion of the cost of substitute care and maintenance.

At the July 2017 termination hearing, Mother admitted:

- M.F.S. and O.U.J.S. had been in out-of-home placement more than two years.

2

- I.D.C.S. had been in out-of-home placement more than a year.
- The State had obtained a child support order for the children, and she had not made any support payments.
- She was not working and had not been working since May 2017.
- She was unemployed between September 2013 and July 2015, between July 2015 and October 2016, and between November 2016 and April 2017.
- She had never had overnight visitation with her children while they were in out-of-home placement.
- She had not visited with the children since April or May 2017.
- Part of her case plan was to have regular and consistent visits with the children, and she had not complied.
- She failed a UA between April 2017 and July 2017.
- There were periods of time where she did not maintain contact with KVC.
- She had not attended therapy in a couple months but had made an appointment with a new therapist the day before the termination hearing.

On cross-examination, Mother testified she regularly attended domestic violence meetings at Safe House. She believed KVC knew where she was living when she lived with her mother and never asked for proof she lived there. No one from KVC helped her find places to live when she lost a place. Similarly, she said that no one from KVC had helped her get a job, offered her a ride to interviews, provided job training, or offered help to set up another drug assessment. She indicated she missed some of her counseling sessions as a result of an illness. Mother asserted no one from KVC asked what she needed help with in order to reintegrate with the children or referred her to counseling. No one from KVC offered additional assistance with whatever was keeping Mother from accomplishing reintegration.

Natasha Maddox, Mother's former caseworker testified. She explained the initial case plan meeting with a parent explained the tasks the parents were expected to complete and subsequent meetings track their progress on the case plans. Maddox stated there were long periods of time when Mother would not contact KVC and, as a result, KVC was unable to help her toward reintegration. Maddox indicated she referred Mother to TBRA, a rapid housing program, when Mother was homeless. Maddox testified Mother entered drug treatment but did not return to treatment after being arrested.

On cross-examination, Maddox testified she did not contact any drug or alcohol treatment providers for Mother. Maddox testified she gave referrals instead of setting up appointments because "[i]t enables them if we do it for them." Although drugs were a large impediment to reintegration, Maddox did not help set up the RADAC assessment. Maddox did not recommend a psychological evaluation because Mother was already in mental health services. Maddox testified she gave Mother referrals and told her the services were out there but left Mother to reach out and obtain the services. Maddox stated Mother never asked for additional assistance and, had she asked, KVC would have provided additional help.

Mother's therapist, Terri Schmitz, testified she started seeing Mother two years before trial. However, Mother's attendance was inconsistent. Mother would show up for a couple of weeks before failing to appear for a month or two. The therapist indicated Mother was no longer a candidate for her services based on her missed appointments.

Amanda Wysocki, Mother's current case manager, testified. Since December 2016, Mother had not provided rent receipts, utility bills, or pay stubs as required by the case plan. She described Mother's contact with KVC as "sporadic." Wysocki acknowledged she knew Mother struggled with the reintegration plan, but stated she could not schedule or maintain appointments for Mother. She tried to get Mother to be accountable and self-sufficient with no success.

Mother testified that she would love nothing more than having her kids back. She acknowledged she struggled, stating, "I don't know if I was denying the fact that maybe I needed more help than what I was asking for." She testified none of her case workers suggested how they could help her to complete her reintegration plan.

The district court found by clear and convincing evidence that the presumptions of unfitness in K.S.A. 2017 Supp. 38-2271(a)(5) and (a)(6) applied. All three children had been in out-of-home placement for more than one year and Mother has "clearly both substantially neglected and willfully refused to carry out a reasonable plan, approved by the Court, directed toward reintegration of the children into the parental home." The district court found Mother "miserably failed" to complete her case plan tasks and this amounted to substantial neglect. It found Mother willfully refused to maintain employment, attend therapy, or take random UAs when asked. The district court found Mother substantially neglected to have routine visitation with her children and "struggle[d] to find even a single task, other than signing releases, that [Mother] completed." The district court found Mother failed to rebut the presumption of unfitness. Finally, the district court found Mother was unfit, by clear and convincing evidence, based on K.S.A. 2017 Supp. 38-2269(b)(3), (8), (9), and (c)(2)-(4). It found termination of parental rights was in the best interests of the children and terminated Mother's rights.

ANALYSIS

A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to make decisions regarding the care, custody, and control of the parent's child. Before a parent can be deprived of the right to the custody, care, and control of the child, the parent is entitled to due process of law. *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008); see *In re X.D.*, 51 Kan. App. 2d 71, 73-74, 340 P.3d 1230 (2014) (the right to be the legal parent of a child is a fundamental right).

The Kansas Legislature has specified that the State must prove "by clear and convincing evidence that the child is a child in need of care." K.S.A. 2017 Supp. 38-2250. In addition to CINC adjudications, the clear and convincing evidence standard of proof applies to all termination of parental rights cases. K.S.A. 2017 Supp. 38-2269(a).

> "When this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's rights should be terminated. [Citation omitted.]." *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011).

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

The Revised Kansas Code for Care of Children provides that the court may terminate parental rights when a child has been adjudicated a CINC. K.S.A. 2017 Supp. 38-2269(a). The statute lists nonexclusive factors the court shall consider in determining unfitness. K.S.A. 2017 Supp. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 2017 Supp. 38-2269(c). Any one of the factors in K.S.A. 2017 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2017 Supp. 38-2269(f).

Mother argues the district court erred in terminating her parental rights because there was insufficient evidence the State made reasonable efforts to help her rehabilitate and permit the family to reintegrate. Quoting *In re B.T.*, No. 112,137, 2015 WL 1125289, at *8 (Kan. App. 2015) (unpublished opinion), she argues K.S.A. 2017 Supp. 38-2269(b)(7) "'clearly imposes an obligation on the relevant agencies to expend reasonable efforts toward reintegrating the child with her parents by correcting the conduct and

6

condition that resulted in the removal of the child.'" Mother argues KVC knew she was having "extreme difficulties" but, rather than assisting her, continued with the same case plan. She contends KVC did not address the root cause of her problem—mental health—and this kept her from reuniting with her family. Mother asserts:

> "Since the reintegration plan failed to address the causes of why the Mother could not complete a reintegration plan, it is not reasonable. Failing to address the mental illness which keeps Mother from completing the reintegration plan assures that the state policy of keeping families together cannot be met. The reintegration plan was doomed to fail because they do not deal with the cause of the problem which keeps Mother from being a parent to her children. Accordingly, the reintegration plan is not reasonable and the presumption does not apply for Mother failing to carry out such a plan."

We acknowledge Mother's claim, but she failed to comply with many facets of the reintegration plan, not just one. The district court terminated Mother's parental rights based on the presumptions of unfitness in K.S.A. 2017 Supp. 38-2271(a)(5) and (6). It also found Mother was unfit under K.S.A. 2017 Supp. 38-2269(b)(3), (8), (9), and (c)(2)-(4). Any one of these reasons, standing alone, could establish grounds for termination of parental rights. See K.S.A. 2017 Supp. 38-2269(f). On appeal, Mother only argues KVC failed to make reasonable efforts to rehabilitate her to allow the family to reintegrate and, thus, the presumption should not apply. When a district court provides alternative bases to support its ultimate ruling on an issue and an appellant fails to challenge the validity of each alternative basis on appeal, an appellate court may decline to address the appellant's challenge to the district court's ruling. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 280, 225 P.3d 707 (2010). Even if we presume without deciding KVC failed to make reasonable efforts to rehabilitate the family, Mother failed to argue she was able to care for the ongoing physical, mental, or emotional needs of the children despite her drug use. She failed to argue she adjusted her circumstances to meet her children's needs, maintained an appropriate level of visitation, completed her case

7

plan tasks, or paid a reasonable portion of the cost of substitute care and maintenance. The district court did not err when it found Mother unfit for these reasons.

Furthermore, Mother acknowledges, quoting *In re B.T.*, No. 112,137, 2015 WL 1125289, at *8, (Kan. App. 2015) (unpublished opinion), the State is not required to make "'a herculean effort to lead the parent through the responsibilities of the reintegration plan.'" Mother never asked for additional help. She suggested she "[didn't] think [she] made it quite obvious enough that [she] might need more help than what [KVC] knew." Maddox testified KVC made weekly attempts to contact Mother but there were long periods of time when KVC had no contact. Shawnette Bell, Mother's family support worker, also testified it was difficult to reach Mother despite texting, calling, and driving past Mother's last known residence. Wysocki described Mother's contact as "sporadic." This sporadic contact made KVC's role in completing her reintegration plan more difficult.

In addition, Maddox noted KVC provided Mother with referrals to therapists, community health, and other inpatient services. However, this merely meant KVC advised Mother the services existed and she had to make contact with the providers. Maddox testified the drug and alcohol facilities would not allow KVC to call and set up appointments for patients. KVC never referred Mother for psychological testing or counseling. Additionally, while KVC did not call and remind Mother to attend her individual therapy appointments, the therapist called and reminded Mother of the appointments. The therapist indicated Mother "would show up for a couple of weeks, and then she would usually not show up for a month or two" before asking to restart services again. The therapist noted Mother was capable of setting her own appointments, she knew when her appointments were, and she chose not to attend. While KVC did not make herculean efforts to reintegrate the family, it made reasonable efforts to reintegrate Mother with her children. Thus, the district court did not err when it found Mother unfit.

8

*Termination of parental rights was in the best interests of the children.*

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2017 Supp. 38-2269(g)(1). In making such a decision, the court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2017 Supp. 38-2269(g)(1). "[T]he court must weigh the benefits of permanency for the children without the presence of their parent against the continued presence of the parent and the attendant issues created for the children's lives." *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010). The district court is in the best position to make findings on the best interests of the children; its judgment will not be disturbed absent an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). "A district court abuses its discretion when no reasonable person would agree with its decision or the decision is based on a legal or factual error." *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 2, 336 P.3d 903 (2014).

The district court's decision states: "The Court finds it is in the best interest of each of these children with respect to each parent to terminate parental rights." Mother argues there was no evidence it was in the children's best interests to terminate her parental rights. She asks this court to reverse the district court's termination of her parental rights. The State contends a reasonable person could agree termination of parental rights was appropriate based on the evidence presented.

The State's argument is more persuasive. Children are entitled to permanency in child time—see *In re K.R.*, 43 Kan. App. 2d at 905—and Mother lacked permanency. During the pendency of Mother's case, she did not maintain stable housing, bouncing from residence to residence every few months, with limited exceptions. In the 4 years preceding trial, Mother worked approximately 10 months, with her longest employment lasting 5-6 months. Mother continued to use drugs; she had a positive UA less than a

9

month before her termination proceedings. The children have waited three years for Mother to show stability and permanency. She has not. A reasonable person could agree. Thus, the district court did not err when it terminated Mother's parental rights based on clear and convincing evidence in the best interests of the children.

Affirmed.